2013 COA 37

**The PEOPLE of the State of Colorado,**
**Plaintiff–Appellee,**

v.

**Eric J. TORREZ, Defendant–Appellant.**

**Court of Appeals No. 10CA1349**

Colorado Court of Appeals,
Div. VII.

Announced March 28, 2013

As Modified on Denial of Rehearing
May 23, 2013 *

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S. 2012.

* J. Jones, J., would grant.

City and County of Denver District Court No. 08CR5851, Honorable Brian R. Whitney, Judge, Honorable Kenneth M. Laff, Judge.

John W. Suthers, Attorney General, Brock J. Swanson, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee.

Douglas K. Wilson, Colorado State Public Defender, Alan Kratz, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant.

Opinion by JUDGE BERNARD

¶ 1 As a general rule, section 18–1–408(3), C.R.S.2012 (subsection 408(3)), requires concurrent sentences when a defendant is convicted of multiple crimes based on identical evidence. The issue in this case is whether a sentencing statute for sex offenses, section 18–1.3–1004(5)(a), C.R.S.2012 (subsection 1004(5)(a)), creates an exception to the general rule. If so, it would require consecutive sentences for those "convicted of one or more additional crimes arising out of the same incident as the sex offense," even when the additional crime is based on the same evidence as the sex offense.

¶ 2 Here, defendant, Eric J. Torrez, pled guilty to fourteen sex offenses. Among these were five pairs of sex offenses in which, he alleges on appeal, the two counts in each pair were based on identical evidence. The trial court sentenced him to consecutive sentences for the two counts in each of the pairs.

¶ 3 We conclude that the two counts in each of the five pairs were based on identical evidence. In doing so, we make clear that (1) our conclusion concerns only the two counts in each pair; (2) the evidence is different from pair to pair; and (3) the five pairs are not cumulatively based on identical evidence.

¶ 4 We further conclude that subsections 408(3) and 1004(5)(a) do not conflict and that they can be construed harmoniously. Thus, subsection 1004(5)(a) does not create an exception to the general rule found in subsection 408(3) that a court must impose concurrent sentences for counts based on identical evidence.

¶ 5 As a result of these conclusions, we reach one more. The consecutive sentences for the two counts in each pair are illegal, and, to remedy that problem, concurrent sentences must be imposed for the two counts in each pair.

¶ 6 We also reject additional arguments that defendant raises. As a result, we affirm in part, reverse in part, and remand for the sole purpose of amending the mittimus.

## I. Background

¶ 7 The victims in this case were twins—a boy and a girl—who were placed, when they were between eight and ten years old, in defendant's care in his home when their mother became homeless. Shortly after defendant and his family took the twins in, he began to abuse them.

¶ 8 He hit them with canes, wires, and his fists. Defendant handcuffed the boy, starved him, and held his hands in boiling water. He repeatedly suffocated the twins by placing plastic bags over their heads.

¶ 9 Defendant also sexually abused them. He had sexual intercourse with the girl beginning when she was twelve. DNA testing later established that defendant had impregnated her four times, and three of the four babies were conceived before her eighteenth birthday. In order to hide his paternity of these children, defendant and his wife stated that their biological son was their father.

¶ 10 Defendant also forced the girl to perform cunnilingus on his wife.

¶ 11 Defendant sodomized the boy with a hairbrush. When the boy was twelve years old, he returned home and asked defendant

what it meant to "spank the monkey." In response, defendant hit the boy's penis with a spatula. On another occasion, defendant hit the boy's penis with the handle of a hammer.

¶ 12 The twins reported the abuse years later, after they had fled defendant's home. The prosecution filed various charges against defendant and his wife based upon sexual assaults that they had committed against the twins. (By the time the twins reported defendant's crimes, the statute of limitations had run on any crimes of physical abuse that defendant may have committed.)

¶ 13 Defendant went to trial on these charges. About three days into the presentation of evidence, he pled guilty to fourteen sexual offenses in exchange for a promise that his wife would be sentenced to probation and that charges arising out of the sexual abuse of the twins would not be filed against two other persons. He waived the requirement that a factual basis be established as a basis for his guilty plea.

¶ 14 At the sentencing hearing, the trial court determined that defendant's sentences on all the counts to which he had pled guilty should run consecutively. The court then sentenced him to spend an indeterminate term of 300 years to life in prison. The trial court also found that defendant was a sexually violent predator.

## II. Counts 3, 7, and 15 Charged Substantive Crimes

¶ 15 Defendant argues that counts 3, 7, and 15 of the information charged only sentence enhancers, not substantive crimes. We are not persuaded.

¶ 16 Count 3 charged defendant with having committed the class three felony of sexual assault on a child as part of a pattern of abuse. It stated:

Between and including approximately March 1, 2002 and May 31, 2002, [defendant] unlawfully, feloniously, and knowingly subjected [the girl], not his spouse to sexual contact ( [r]esulting in the birth of [A.] on January 15, 2003) and the victim was less than fifteen years of age and the defendant was at least four years older than the victim.

Further, the defendant committed the act as a pattern of sexual abuse, in violation of section 18–3–405(1), 2(d), C.R.S.

¶ 17 Count 7 charged defendant with the class three felony of sexual assault on a child by a person in a position of trust as part of a pattern of abuse. It stated:

Between and including approximately March 1, 2005 and May 31, 2005, [defendant] unlawfully, feloniously, and knowingly subjected [the girl], not his spouse to sexual contact ( [r]esulting in the birth of [G.] on January 26, 2006) and the victim was less than eighteen years of age and the defendant was in a position of trust with respect to the victim.

Further, the defendant committed the act as a part of a pattern of abuse; in violations of section 18–3–405.3(1), (2)(b), C.R.S.

¶ 18 Count 15 charged defendant with the class three felony of sexual assault on a child less than fifteen years of age by threat or force as part as a pattern of abuse. It stated:

Between and including approximately October 4, 1998 and October 3, 2000, [defendant] unlawfully, feloniously, and knowingly subjected [the boy], not his spouse, to sexual contact (Spanking the Monkey— Shower Incident) and the victim was less than fifteen years of age and the defendant was at least four years older than the victim.

Further, the defendant applied force against the victim in order to accomplish or facilitate sexual contact; in violation of section 18–3–405(1), 2(a), C.R.S.

Further, the defendant, in order to accomplish or facilitate the sexual contact, threatened imminent death, extreme pain, or kidnapping against the victim or another person, and the victim believed the defendant had the present ability to execute the threat; in violation of section 18–3–405(1), 2(b), C.R.S.

Further, the defendant committed the act as a part of a pattern of sexual abuse; in violation of section 18–3–405(1), 2(d), C.R.S.

## A. Standard of Review

¶ 19 Defendant did not raise the argument concerning these three counts before the trial court. Nonetheless, the sufficiency of a charge is a jurisdictional issue and may be raised at any time. *See* Crim. P. 12(b)(2); *People v. Melillo*, 25 P.3d 769, 777 (Colo. 2001) ("Crim. P. 7(b)(2) sets forth the requirements for determining whether an information is sufficient and thus invokes jurisdiction of the court.").

## B. Discussion

¶ 20 We reject defendant's contentions that counts 3, 7, and 15 charge only sentence enhancers, not substantive offenses. We conclude that these counts charge both substantive offenses *and* sentence enhancers.

¶ 21 An information is technically sufficient and invokes the jurisdiction of the court if one can understand by reading it

(I) That it is presented by the person authorized by law to prosecute the offense;

(II) That the defendant is identified therein . . . ;

(III) That the offense was committed within the jurisdiction of the court . . . ;

(IV) That the offense charged is set forth with such degree of certainty that the court may pronounce judgment upon a conviction.

Crim. P. 7(b)(2) (emphasis supplied); *see also Melillo*, 25 P.3d at 777–78.

¶ 22 The fourth requirement serves two primary functions. It "permit[s] the accused to prepare an adequate defense," and it "assure[s] that the defendant cannot be prosecuted again for the same crime." *Melillo*, 25 P.3d at 778 (quoting *People v. Chavez*, 730 P.2d 321, 325 (Colo.1986)). "[I]f an information identifies the essential elements of the crime charged, then it is sufficient." *Id.*

¶ 23 Trial courts may not enter a separate conviction or sentence on a count that is only a sentence enhancer. *See People v. Luman*, 994 P.2d 432, 438 (Colo.App. 1999)("[W]e conclude that, as defined in § 18–3–405(2)(d), sexual assault on a child as part of a pattern of sexual abuse should be construed as a sentence enhancer of the sin-

gle crime of sexual assault on a child."); *see also People v. Martinez*, 36 P.3d 201, 204 (Colo.App.2001)("Here, the mittimus reflects a conviction and a separate sentence imposed on the special offender charge as a substantive offense in addition to conviction and sentences upon the enhanced offenses. Therefore, that conviction and sentence must be vacated."). But "a single count may charge both a crime *and* a sentence enhancer." *Melillo*, 25 P.3d at 777 (emphasis supplied).

¶ 24 Here, counts 3, 7, and 15 charged both substantive crimes—sexual assault on a child (counts 3 and 15) and sexual assault on a child by one in a position of trust (count 7)— as well as sentence enhancers—the acts were committed as part of a pattern of sexual abuse.

¶ 25 We conclude that these counts identified the elements of the crimes charged and closely "track[ed] the statutory language." *Id.* at 778. As in *Melillo*, counts 3 and 15 are substantially the same as the statutory language of the crime of sexual assault on a child found in section 18–3–405, C.R.S.2012. And, again as in *Melillo*, count 7, which charged defendant with the crime of sexual assault on a child by one in a position of trust, closely tracked the language of section 18–3–405.3, C.R.S.2012.

¶ 26 This substantial similarity means that defendant was adequately notified of the charges he faced so that he could prepare his defense and prevent further prosecution on the same charges if he were to be convicted or acquitted. *Melillo*, 25 P.3d at 777–78. The additional presence of a sentence enhancer in these counts does not undercut this conclusion. *See id.* at 777.

## III. Subsection 1004(5)(a) Does Not Support Consecutive Sentences for the Two Counts in Each Pair Because They Are Based on Identical Evidence

¶ 27 Defendant argues that the trial court imposed an illegal sentence when it ordered that he serve consecutive prison terms for counts 2 and 3; 9 and 10; 11 and 12; 14 and 15; and 19 and 20. We agree with defendant's argument concerning the two counts in

each pair for the reasons that we explain below.

¶ 28 To provide some background, and as is pertinent here,

- Counts 2 and 3 named the girl as the victim. Count 2 charged the class three felony of sexual assault on a child by a person in a position of trust; Count 3 charged the class three felony of sexual assault on a child as part of a pattern of abuse. Both counts stated that the sexual assault was based on allegations of sexual contact that resulted in the birth of baby A. in January 2003. The court imposed consecutive sentences of twenty-four years each for these counts.

- Counts 9 and 10 named the boy as the victim. Count 9 charged the class three felony of sexual assault on a child; Count 10 charged the class three felony of sexual assault on a child by a person in a position of trust. Both counts stated that the sexual assault was based on allegations of sexual contact described as the "[h]air [b]rush [i]ncident." The court imposed consecutive sentences of twenty-four years each for these counts. ·

- Counts 11 and 12 named the boy as the victim. Count 11 charged the class three felony of sexual assault on a child; Count 12 charged the class three felony of sexual assault on a child by a person in a position of trust. Both counts stated that the sexual assault was based on allegations of sexual contact described as the "[s]panking the [m]onkey—[l]iving [r]oom [i]ncident." The court imposed consecutive sentences of twenty-four years each for these counts.

- Counts 14 and 15 named the boy as the victim. Count 14 charged the class three felony of sexual assault on a child by a person in a position of trust; count 15 charged the class three felony of sexual assault on a child as part of a pattern of abuse. Both counts stated that the sexual assault was based on allegations of sexual contact described as the "[s]panking the [m]onkey—[s]hower [i]ncident." The court imposed consecutive sentences of twenty-four years each for these counts.

- Counts 19 and 20 named the girl as the victim. Count 19 charged the class four felony of sexual assault on a child; count 20 charged the class three felony of sexual assault on a child by a person in a position of trust. Both counts stated that the sexual assault was based on allegations of sexual assault described as "Saturday [d]uring [b]owling." The court imposed consecutive sentences of twelve years for the class four felony in count 19 and twenty-four years for the class three felony in count 20.

## A. Standard of Review

¶ 29 An illegal sentence is one that is not authorized by law, meaning that it is inconsistent with the legislative scheme that has been established by the legislature. *People v. Wenzinger,* 155 P.3d 415, 418 (Colo. App.2006). Claims that a sentence was not authorized by law may be raised at any time. *People v. Bowerman,* 258 P.3d 314, 316 (Colo. App.2010). Whether the trial court correctly determined the statutorily authorized sentencing range is an issue of law that we review de novo. *People v. Everett,* 250 P.3d 649, 663 (Colo.App.2010).

¶ 30 Our inquiry here also requires us to interpret two statutes, which is an issue that we also review de novo. *People v. Garcia,* 113 P.3d 775, 780 (Colo.2005). When interpreting statutes, we first look to their plain language, and we interpret that language according to its common meaning. *Hastie v. Huber,* 211 P.3d 739, 741 (Colo.App.2009). Then,

> [w]e interpret a statute in a way that best effectuates the purpose of the legislative scheme. When we construe a statute, we read and consider the statute as a whole and interpret it in a manner giving consistent, harmonious, and sensible effect to all of its parts. In doing so, we do not interpret the statute so as to render any part of it either meaningless or absurd. If there is an apparent conflict between statutory sections, we are required to attempt to harmonize them to give effect to the legislature's intent in enacting both of the statutes.

*Devora v. Strodtman*, 2012 COA 87, ¶9, 282 P.3d 528 (citations omitted). If the statute is unambiguous, we look no further. *Id.*

¶ 31 If we cannot harmonize two conflicting statutes, and one is general and one is special, we treat the special statute as an exception to the general statute, subject to an exception that does not apply here. § 2-4-205, C.R.S.2012; *Martin v. People*, 27 P.3d 846, 852 (Colo.2001)("A general provision, by definition, covers a larger area of the law. A specific provision, on the other hand, acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a specific circumstance.").

### B. Analysis

#### 1. An Explanation of the General Rule and of a Possible Exception to It

¶ 32 A trial court ordinarily retains the discretion to determine whether to impose either concurrent or consecutive sentences when a defendant is convicted of multiple offenses. *Juhl v. People*, 172 P.3d 896, 899 (Colo.2007); *People v. Glasser*, 293 P.3d 68, 78 (Colo.App.2011). But this discretion is circumscribed in certain circumstances. For example, concurrent sentences are required "for offenses committed against a single victim when (1) the counts are based on the same act or series of acts arising from the same criminal episode; and (2) the evidence supporting the counts is identical." *Glasser*, 293 P.3d at 78–79 (citing § 18–1–408(3)); *see also Juhl*, 172 P.3d at 899–900.

¶ 33 But the mere possibility that identical evidence may support two convictions will not deprive the court of its discretion to impose consecutive sentences. *Juhl*, 172 P.3d at 900; *People v. Muckle*, 107 P.3d 380, 384 (Colo.2005). Instead, the statute requires courts to impose concurrent sentences "only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence." *Juhl*, 172 P.3d at 900.

¶ 34 In determining whether two crimes are supported by identical evidence, trial courts do not use the "strict elements" test commonly used for double jeopardy pur-

poses. *Id.* at 902 (citing *People v. Leske*, 957 P.2d 1030, 1036 (Colo.1998)). Instead,

> whether the evidence supporting the offenses is identical turns on whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different.

*Id.* (citing *Muckle*, 107 P.3d at 383); *see also Qureshi v. District Court*, 727 P.2d 45, 47 (Colo.1986) (holding that the defendant's convictions for first degree assault and attempted manslaughter were not supported by identical evidence because the defendant stabbed the victim twice).

¶ 35 However, subsection 1004(5)(a) mandates consecutive sentences in the following circumstances:

> Any sex offender sentenced pursuant to subsection (1) of this section and convicted of one or more additional crimes arising out of the same incident as the sex offense shall be sentenced for the sex offense and such other crimes so that the sentences are served consecutively rather than concurrently.

¶ 36 As pertinent to our analysis, section 18–1.3–1004(1)(a), C.R.S.2012 (subsection 1004(1)(a)), states that

> the district court having jurisdiction shall sentence a sex offender to [prison] for an indeterminate term of at least the minimum of the presumptive range specified in section 18–1.3–401 for the level of offense committed and a maximum of the sex offender's natural life.

There is no dispute in this case that both counts in each of the pairs were subject to sentencing under subsection 1004(1)(a).

¶ 37 Defendant argues that subsection 408(3) controls this case and it requires that he receive concurrent sentences for the convictions of the paired counts because they relied on identical evidence. The prosecution argues that subsection 1004(5)(a) applies instead, because, as a more specific statute directed only at sex offenders, it prevails as an exception to subsection 408(3). *See, e.g.*, § 2–4–205; *People v. Cooper*, 27 P.3d 348, 357–58 (Colo.2001) (holding that a sentencing

provision specific to sex offenders "is a specific provision which prevails over the general felonious offender sentencing provision").

¶ 38 Although divisions of this court have cited subsection 1004(5)(a), none has analyzed the specific issue that we confront, which is whether subsection 1004(5)(a) mandates consecutive sentences even where two or more counts are based on identical evidence. *See, e.g., People v. Douglas,* 2012 COA 57, ¶ 76–77, 296 P.3d 234 (concluding that neither subsection 408(3) nor subsection 1004(5)(a) applied because the evidence was not identical and the crimes did not "arise out of the same incident"); *see also People v. Cordova,* 199 P.3d 1, 6 (Colo.App.2007).

### 2. The Two Counts in Each Pair Were Based on Identical Evidence

¶ 39 To resolve this case, we must determine whether defendant may assert that the crimes were supported by identical evidence even though he waived the establishment of a factual basis for his plea. Although subsection 408(3) applies to guilty pleas generally, *see Juhl,* 172 P.3d at 900–01, a division of this court held that a defendant waives the right to mandatory concurrent sentencing by waiving the factual basis for a guilty plea. *People v. Maestas,* 224 P.3d 405, 408–10 (Colo.App. 2009). In some cases where there is factual support for a guilty plea,

> the question of whether the evidence supporting the pleas is identical can be determined either by examining evidentiary sources in the record, *see, e.g., Juhl,* 172 P.3d at 898 n.1 (relying on facts as developed at preliminary hearing and motions hearing), or by looking to the prosecutor's factual representations at the providency hearing.

*Maestas,* 224 P.3d at 409. We look to such information to determine whether "the evidence will support no other reasonable inference than that the convictions were based on identical evidence." *Juhl,* 172 P.3d at 900.

¶ 40 Here, defendant pled guilty after his trial had begun. The transcripts of the incomplete trial are not in the appellate record.

¶ 41 But there is information in the record that allows us to conclude, for five reasons,

that there is no other reasonable inference than that the two counts in each pair were based on identical evidence. *See id.; Muckle,* 107 P.3d at 384.

¶ 42 First, unlike in *Maestas,* the charging document here expressly refers to sexual contact based on the same incidents in counts 2 and 3 ("[r]esulting in the birth of [A.]"); 9 and 10 ("[h]air [b]rush [i]ncident"); 11 and 12 ("[s]panking the [m]onkey—[l]iving [r]oom [i]ncident"); 14 and 15 ("[s]panking the [m]onkey—[s]hower [i]ncident"); and 19 and 20 ("Saturday [d]uring [b]owling").

¶ 43 On its face, the information provides support for the conclusion that the two counts in each pair "resulted from the same act, so that the evidence of the act is identical." *Juhl,* 172 P.3d at 902.

¶ 44 Second, the prosecutor's sentencing argument described some of the events in a manner indicating that the two counts in each pair were based on identical evidence. For example, she described how defendant had sodomized the boy with a hair brush when he was in the sixth grade, which was the incident described in counts 9 and 10. Then, she referred to two different "spank[ing] the monkey" episodes, or those described in counts 11 and 12 and in counts 14 and 15. In one incident, defendant smacked the boy's penis with a spatula, and in the other he struck the boy's penis with the handle of a hammer.

¶ 45 Third, counts 2 and 3 obviously concerned a single, discrete event: sexual contact that led to the birth of a child.

¶ 46 Fourth, during the sentencing hearing, the court and the prosecutor both stated that they believed that at least some of the counts for which the prosecution requested mandatory consecutive sentences were based on identical evidence.

> [The Court]: [To the prosecutor] I—I did have one legal question and ultimately the sentencing is not about the math, it's about what happened, but you had indicated in your sentencing memorandum that there were counts that were mandatorily consecutive and, frankly, it seemed somewhat counterintuitive to the [c]ourt *because they were based on the same acts* and—and I

reviewed 18–1.3–1004(5)(a) and it talks about additional crimes arising out of the same incident as the sex offense, and this really seemed to be two sentences arising out of the sex offense ... so ... is there authority that specifically relates to a mandatory consecutive sentence for two different charges based on the same—the same act—same incident?

[Prosecutor]: Judge, I can tell you that [the memorandum] was prepared by [another prosecutor]. And quite honestly, prior to this I would have also assumed— which is why we asked for him to help us with this—that some of these would at least merge because of that and this is— and what he indicated to us was that, no, because those are sexual offenses on the same victim, that they would have to run consecutive.

(Emphasis supplied.)

¶ 47 Last, the prosecution does not, on appeal, directly address the question whether there is "no reasonable inference" that the two counts in each pair were based on identical evidence. Rather, the prosecution relies on other contentions to oppose defendant's claim.

¶ 48 Based on the foregoing factors, we conclude that the two counts in each pair (2 and 3; 9 and 10; 11 and 12; 14 and 15; and 19 and 20) are based on identical evidence. This is because "the evidence can support no reasonable inference that the [two counts in each pair] were based on acts that were separated by time or place," and because "[b]oth [counts in each pair] were supported by evidence" of the same event. *Juhl*, 172 P.3d at 902–03; *accord People v. Phillips*, 2012 COA 176, ¶ 173, 315 P.3d 136 (the evidence presented at trial supported "no reasonable inference other than defendant's convictions of first degree murder and of child abuse resulting in death were based on identical evidence – that defendant starved his stepson ... to death in a linen closet").

### 3. The Exception to the General Rule Does Not Control This Case

¶ 49 The general rule in subsection 408(3) would normally apply and, in the ab-

sence of a statutory exception to the general rule, the imposition of consecutive sentences for the two counts in each pair would result in an illegal sentence because such a sentence would be inconsistent with the legislative scheme. *See Wenzinger*, 155 P.3d at 418.

¶ 50 We agree with defendant that such is the case here. In doing so, we reject the prosecution's argument that subsection 1004(5)(a) is a clear statutory exception to the general rule found in subsection 408(3). We reach this conclusion by applying the principles of statutory construction that we have described above.

¶ 51 Upon his conviction for the two counts in each pair, subsection 1004(1)(a) required that defendant be sentenced as a sex offender to an indeterminate prison term. This requirement, in turn, triggered the application of subsection 1004(5)(a).

¶ 52 However, the plain language of subsection 1004(5)(a) indicates that it does not require consecutive sentences in this case, and that it does not create an exception to the general rule found in subsection 408(3).

¶ 53 Although subsection 1004(5)(a) refers to crimes arising out the "same incident," it is silent as to what should happen if such crimes are based on identical evidence. This silence provides us with a clear and logical basis for harmonizing subsection 408(3) and subsection 1004(5)(a). *See Devora*, at ¶ 9. We do so by relying on cases involving a nearly identically worded analogue, the crime of violence statute, section 18–1.3–406(1)(a), C.R.S.2012. As pertinent here, that statute states: "A person convicted of two or more separate crimes of violence arising out of the same incident shall be sentenced for such crimes so that sentences are served consecutively rather than concurrently."

¶ 54 Divisions of this court have held that the crime of violence statute is subject to the requirements of subsection 408(3). For example, in *People v. O'Shaughnessy*, 275 P.3d 687, 697 (Colo.App.2010), *aff'd*, 2012 CO 9, 269 P.3d 1233, the division stated that "[c]rimes of violence are 'separate' if not based on identical evidence; thus, the evi-

dence on which the convictions were based determines whether consecutive sentences may be imposed." *Accord Cordova,* 199 P.3d at 6; *People v. Jurado,* 30 P.3d 769, 773 (Colo.App.2001).

¶ 55 In this context, the crime of violence statute is substantially similar to subsection 1004(5)(a), although we note that the crime of violence statute refers to "separate" crimes, while subsection 1004(5)(a) refers to "additional" crimes. In a petition for rehearing, the prosecution contends that (1) the use of these different adjectives means that subsection 1004(5)(a) is more specific subsection 408(3); (2) "the exclusion of crimes based on identical evidence is fully consonant with the meaning of 'separate crimes,' [but] is wholly inapposite to the meaning of 'additional crimes'"; (3) subsections 1004(5)(a) and 408(3) "conflict"; and (4) as a result, subsection 1004(5)(a) prevails because it is "more specific." We are not persuaded for two interrelated reasons.

¶ 56 First, we keep in mind the importance and broad scope of the general rule contained in section 18-1-408(3). It appears in part 4 of article 1, title 18, which is entitled "Rights of Defendant." The purpose of part 4 is described in section 18-1-401, C.R.S. 2012.

> It is the intent of this part 4 to confer upon *every person accused of an offense* the benefits arising from said part 4 as a matter of *substantive right,* in implementation of minimum standards of criminal justice within the concept of due process of law.

(Emphasis supplied.)

¶ 57 The prosecution's argument does not directly take on the general rule. Rather, as we understand it, the prosecution's argument focuses peripherally on the use of the word "separate" in subsection 406(1)(a), the crime of violence statute. Because several divisions of this court have interpreted that adjective in light of the general rule found in subsection 408(3), the prosecution's argument continues, the use of the different adjective "additional" in subsection 1004(5)(a) is proof of the legislature's intent to create an exception to the general rule.

¶ 58 We respectfully disagree. The legislature made clear its intent in subsection 408(3) to confer, as a matter of substantive right, a benefit upon *all* defendants. This benefit consists of the "right to the imposition of concurrent sentences" when two or more convictions are based on identical evidence. *See Juhl,* 172 P.3d at 900. Thus, the various decisions that discuss the adjective "separate" in subsection 406(1)(a) do no more than recognize the general rule. *See People v. Trujillo,* 114 P.3d 27, 33 (Colo.App.2004) ("If different evidence is used to establish guilt of each of the multiple offenses, they are separate crimes for purposes of [subsection 406(1)(a) ]."); *Jurado,* 30 P.3d at 773 (crimes of violence are separate offenses when the evidence supporting the convictions is not identical within the meaning of subsection 408(3)); *People v. Hahn,* 813 P.2d 782, 783–84 (Colo.App.1991)("[T]he legislative use of the term 'separate' in [subsection 406(1)(a)] was intended merely to incorporate" the concept that concurrent sentences are required only when identical evidence establishes the defendant's guilt of each of the offenses.). The divisions in these

¶ 59 The divisions in these cases certainly did not conclude that the general rule in subsection 408(3) was created by, dependent upon, or defined by the use of the word "separate" in subsection 406(1)(a), or that the meaning of the general rule is limited to, or circumscribed by, the meaning of the word "separate." Therefore, with that observation in mind, we must determine whether the legislature intended to create an exception to the general – and up to now universal – rule found in subsection 408(3) by inserting, without *anything else,* the word "additional" in subsection 1004(5)(a). We conclude that the legislature did not intend to create such an exception because there is no express statement in subsection 1004(5)(a), in subsection 408(3), or in any other statute, that the word "additional" was included in subsection 1004(5)(a) for the purpose of creating one. *See People v. MacLeod,* 176 P.3d 75, 81 (Colo.2008)("Nowhere in this lengthy, detailed statute [the rape shield statute] is there any language limiting its applicability.... Without any indication of a legislatively created ... exception, reading one into the statute would contradict [the statute], and would not give sensible effect to the

General Assembly's intent in enacting [the statute]."); *Chittenden v. Colo. Bd. of Social Work Examiners*, 292 P.3d 1138, 1142 (Colo. App.2012)("[W]e [do not] perceive anything in [a procedural administrative statute] that suggests a legislative intent to create an additional exception to the general [administrative] rule . . . .").

¶ 60 Therefore, we interpret the adjective "additional" in subsection 1004(5)(a), as the prior divisions interpreted the adjective "separate" in subsection 406(1)(a), in light of the general rule, and not vice versa. As a result, in the absence of clear legislative guidance to the contrary, we conclude that the legislature did not intend to carve out an exception to the general rule that *all* defendants are entitled to the matter of substantive right contained in subsection 408(3) by including the adjective "additional" in subsection 1004(5)(a).

¶ 61 Second, our analysis of the meanings of the adjectives "separate" and "additional" in the contexts in which they are used does not reveal the conflict that the prosecution describes. Rather, we conclude that there is no meaningful difference between them. *See Allstate Ins. Co. v. Smith*, 902 P.2d 1386, 1389 (Colo.1995)(use of materially different language in subsections of a statute indicates that the legislature did not intend identical results).

¶ 62 They each modify the word "crime." Section 18-1-104(1), C.R.S. 2012, defines the word "crime" to mean "a violation of, or conduct defined by, any state statute for which a fine or imprisonment may be imposed." Thus, both adjectives apply to conduct defined by statute.

¶ 63 The adjective "additional," as it is used in the context of subsection 1004(5)(a), is not defined by Colorado statute or case law. As the prosecution points out, the dictionary defines that adjective to mean "existing or coming by way of addition : ADDED FURTHER." *Webster's Third New International Dictionary* 24 (2002). Thus, an "additional crime" is one that comes by way of addition, or is added further, to crimes that are already in existence.

¶ 64 The prosecution's argument relies on dictionary definitions of the adjective "separate," such as "set or kept apart : standing alone : DETACHED, ISOLATED"; "existing by itself : AUTONOMOUS INDEPENDENT"; and "dissimilar in nature or identity : DISTINCT, DIFFERENT." *Id.* at 2069.

¶ 65 We disagree with the prosecution's argument that the dictionary definitions of the adjectives "separate" and "additional," as they are used in the contexts at issue here, conflict. As we have indicated above, divisions of this court have held that crimes of violence are "separate," as that word is used in subsection 406(1)(a), when the evidence supporting them is not identical within the meaning of subsection 408(3).

¶ 66 Thus, for the purposes of subsection 406(1)(a), "separate" does not mean (1) crimes that are necessarily set or kept apart, (2) crimes that stand alone to the point that they are detached or isolated, (3) crimes that exist by themselves to the point that they are autonomous or independent, or (4) crimes that are dissimilar in nature or identity to the point that they are distinct or different. *See Hahn*, 813 P.2d at 783 (rejecting the defendant's argument that the use of the word "separate" in subsection 406(1)(a) demonstrates the legislature's intent to (a) *allow* consecutive sentences only where "two or more violent crimes result from two or more *independent* and *unconnected* acts"; and (b) *bar* them if the offenses, although they arise out of the same incident, "result from one, continuous course of action" (emphasis supplied)). Rather, even similar crimes that arise out of the same incident are "separate" under subsection 406(1)(a) if they are not based on identical evidence. *See Jurado*, 30 P.3d at 773 ("[O]ffenses are not necessarily supported by identical evidence even though there are some common elements of proof.").

¶ 67 We presume that the legislature chooses its words carefully. *See People v. J.J.H.*, 17 P.3d 159, 162 (Colo.2001)("Courts should not presume that the legislature used language 'idly and with no intent that meaning should be given to its language.'") (quoting *McMillin v. State*, 158 Colo. 183, 188, 405 P.2d 672, 674 (1965)). However, beyond the dictionary-based analysis of the adjectives

"additional" and "separate" that we have described, the prosecution does not point to anything else to support its argument, and our research has not revealed any additional statutory statement that would support it. We therefore reiterate that the legislature has not expressly stated in any statute that

- the word "additional" in subsection 1004(5)(a) should be interpreted differently from the word "separate" in subsection 406(1)(a); or
- the word "additional" in subsection 1004(5)(a) was used to create an exception to the general rule contained in subsection 408(3).

¶ 68 Relying on this analysis, and on the authority supporting it, we conclude that the meaning of the term "separate crime" in subsection 406(1)(a) is not materially different from the meaning of the term "additional crime" in subsection 1004(5)(a), as we have defined the latter term above. *See Allstate Ins. Co.*, 902 P.2d at 1389. If an "additional crime" is one that comes by way of addition, or is added further, to crimes that are already in existence, we conclude – *particularly in light of the discussion above of the general universal rule found in subsection 408(3)* – that such addition or further adding comes in the form of a crime based on different evidence, not in the form of one that is based on identical evidence.

¶ 69 Thus, we are persuaded by the language in cases such as *O'Shaughnessy, Cordova*, and *Jurado*, and we apply it here to support our holding that, although subsection 1004(5)(a) mandates consecutive sentences in some circumstances, it does not act as an exception to the general rule established by subsection 408(3) that sentences for convictions based on identical evidence, such as the paired counts here, must be concurrent.

¶ 70 Therefore, we conclude that the trial court imposed an illegal sentence when it imposed consecutive sentences for the two counts in each pair.

### IV. The Trial Court Did Not Abuse Its Discretion When It Imposed a Maximum Sentence

#### A. Standard of Review

¶ 71 We review sentencing decisions that are within the statutory range for an abuse of discretion because the trial court's "familiarity with the facts of the case" places it "in the best position to fix a sentence that reflects a balance of the relevant considerations." *People v. Vigil*, 718 P.2d 496, 507 (Colo.1986); *accord Vensor v. People*, 151 P.3d 1274, 1280 (Colo.2007).

#### B. Discussion

¶ 72 "Sentencing by its very nature is a discretionary decision, which requires the weighing of various factors and striking a fair accommodation between the defendant's need for rehabilitation or corrective treatment and society's interest in safety and deterrence." *People v. Watkins*, 200 Colo. 163, 166, 613 P.2d 633, 635–36 (1980). Nevertheless, a trial court's sentence must not be devoid of reason or principle and should reflect a rational selection of the sentencing alternatives consistent with the aims of the sentencing process. *Id.* at 166, 613 P.2d at 636.

¶ 73 Trial courts should consider "the nature and elements of the offense, the character and rehabilitative potential of the offender, any aggravating or mitigating circumstances, and the public interest in safety and deterrence." *People v. Myers*, 45 P.3d 756, 757 (Colo.App.2001); *see* § 18–1–102.5, C.R.S.2012. The court may not unduly emphasize one factor to the exclusion of others. *Myers*, 45 P.3d at 757.

¶ 74 But the court "need not engage in a point-by-point discussion of every factor relevant to its sentencing decision" and a "reasonable explanation for the sentence will suffice." *People v. Martinez*, 179 P.3d 23, 26 (Colo.App.2007). A trial court may properly find certain factors to be more compelling than others. *Myers*, 45 P.3d at 757. Likewise, the circumstances of the crime alone might justify the imposition of a particularly harsh sentence. *Id.*; *Vigil*, 718 P.2d at 507; *see also People v. Hayward*, 55 P.3d 803, 808 (Colo.App.2002) ("The trial court determined that a sixteen-year sentence was appropriate because defendant had committed an especially vicious attack. . . .").

¶ 75 Here, the trial court expressly found that the heinous nature of defendant's crimes justified the maximum possible sentence. *See Vigil*, 718 P.2d at 507; *Hayward*, 55 P.3d at 808–09. At the sentencing hearing, the trial court heard the following:

- The twins asked for the maximum sentence. The boy described how, because defendant impregnated the girl four times beginning at age twelve, defendant "ruin[ed] [his] sister's life."

- The prosecutor described the abuse that the twins endured. In addition to the abuse described above, she stated that defendant forced a dildo down the boy's throat, and that he placed plastic bags over the heads of both of the children to suffocate them. The prosecutor described how defendant left the boy handcuffed in the hallway at night and would routinely starve him or force him to eat from a dog bowl. When the boy ate a burrito without defendant's permission, defendant left him naked outside and force-fed him laxatives.

- In the presentence interview, defendant denied having sex with the girl until she was eighteen, and then stated that he did not "knowingly" impregnate her before that.

- DNA evidence established definitively that defendant was the father of the four children to whom the girl gave birth.

- In his statement to the trial court, defendant denied abusing the twins, and he told the court, "I feel like I'm the one that's being totally raped."

¶ 76 The court then discussed the reasons for its sentence:

[The Court]: [Defendant], I don't believe you. I believe the children.

. . . .

The statute sets out guidelines for sentencing . . . but this is truly a case where the gravity of the offense overshadows the rest. The [c]ourt has considered your lack of a criminal history but when you commit a crime for ten years it's hard to call that the lack of a criminal history.

Rehabilitation: I'll order sex offender treatment for you, but your complete denial indicates that chances for rehabilitation are remote at best.

Nothing in your social history as reported in the [presentence investigation report] begins to explain or justify these acts. I'm asked to prevent crime and promote respect for the law by providing an effective deterrent and . . . that commands a severe sentence here. And ultimately I come back to the extent of the injury caused to your victims and the burdens that they will carry through their lives— these young children with most of their lives ahead of them—are unimaginable. They carry scars that no one should bear, scars that you created with your violent and depraved acts. The level of abuse is shocking. This was a house of horrors just as the [prosecutor] described it, and you ruled that house with an iron fist and you used everyone for your selfish and sadistic pleasure.

. . . .

The [c]ourt has imposed the maximum sentence of 300 years to life. This is a case that cries out for the maximum if any case does. You committed perhaps one noble act and that was to enter this plea for the sake of your wife and, as was your intent, she has received the benefit of that act, but you will not.

. . . .

Having said that, it's the [c]ourt's expectation and desire that you spend the rest of your life in prison.

¶ 77 We conclude that the trial court properly set forth the reasons for its sentencing decision, and that these were consistent with the aims of the sentencing process. *Watkins*, 200 Colo. at 166, 613 P.2d at 635–36. Although the trial court did not need to go "point-by-point" through the factors, *Martinez*, 179 P.3d at 26, it thoroughly discussed several of the factors. The trial court noted that defendant was unlikely to be successfully rehabilitated because he completely denied committing the crimes. *See* § 18–1–102.5 (1)(d), C.R.S.2012. Most importantly, the trial court analyzed the egregious nature of the crimes and found that a harsh sentence was justified. *See* § 18–1–102.5(1)(a), C.R.S.2012. Because the crimes were severe and because

they caused serious damage to the twins, the trial court also stated that a severe sentence was necessary to achieve a deterrent effect. *See* § 18–1–102.5(1)(c), C.R.S.2012.

¶ 78 We reject defendant's argument that the trial court was required to impose a lower minimum range so that defendant could go on parole earlier. Defendant argues that this alternative sentence would not have made the public any less safe because the parole board could determine whether he posed a threat. But the trial court's imposition of a maximum sentence protects the public because it ensures that defendant cannot commit these crimes again.

¶ 79 The court also considered other appropriate factors. It emphasized the seriousness of these offenses and the unlikely possibility that defendant could be rehabilitated, among other factors. Based on the evidence in the record, we conclude that the trial court did not abuse its discretion in deciding that these factors called for what was, in effect, a sentence to life imprisonment. The court stated that "it's the [c]ourt's expectation and desire that [defendant] spend the rest of [his] life in prison." Because, based on this record, this decision was reasonable and because the trial court expressly considered the various sentencing factors, we conclude that the trial court did not abuse its discretion in imposing the maximum possible sentence.

## V. The Trial Court's Determination That Defendant Was a Sexually Violent Predator Is Supported by the Record

### A. Standard of Review

¶ 80 "We review a trial court's findings of fact for clear error, but we review de novo the question of whether the court's findings are sufficient to support a legal conclusion that the defendant is a sexually violent predator." *People v. Buerge*, 240 P.3d 363, 369 (Colo.App.2009); *accord People v. Tuffo*, 209 P.3d 1226, 1230 (Colo.App.2009).

### B. Discussion

¶ 81 A sexually violent predator is an offender:

- who was over the age of eighteen on the date of the offense;
- who has been convicted of unlawful sexual contact;
- whose victim was a stranger or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and
- who, based on the results of a risk assessment examination, is likely to commit another sexual offense under the same circumstances.

*People. v. Loyas*, 259 P.3d 505, 511 (Colo. App.2010); *Tuffo*, 209 P.3d at 1230; *see* § 18–3–414.5(1)(a)(III)–(IV), C.R.S.2012.

¶ 82 Based on the results of a risk assessment examination, a trial court must make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator. § 18–3–414.5(2), C.R.S. 2012.

¶ 83 A trial court may adopt the findings of the risk assessment evaluator without going through his or her evaluation line by line. *See Buerge*, 240 P.3d at 369–70 (holding that, although the trial court "[e]ssentially . . . adopted the findings and conclusions in the risk assessment," these findings were "more than sufficient"). And the court is not required to hold an evidentiary hearing to determine whether the necessary factors have been established, although it may, in its discretion, determine that a hearing is warranted. *Tuffo*, 209 P.3d at 1232.

¶ 84 Where a finding in an assessment is "unexplained, unsourced, . . . disputed," and unsupported by ample evidence, due process and section 18–3–414.5(2) require that the trial court make further factual findings before adopting the assessment. *Tuffo*, 209 P.3d at 1232. But "[m]ore general findings might suffice, or the lack of specific findings might be harmless under Crim. P. 52(a), if the evidence supporting [a sexually violent predator] conclusion were ample." *Id.*

¶ 85 Here, defendant challenged the assessment's finding that he was employed less than full time at the time of his arrest. This factor was one of ten questions that the evaluator considered in determining whether defendant posed a risk of recidivism. Ac-

cording to the evaluator, a finding that four or more factors have been met indicates that an offender is likely to be arrested again for violent crime. This finding—that defendant was employed less than full time—was the fifth factor leading to the evaluator's conclusion that he was a sexually violent predator.

¶ 86 Defense counsel did not challenge the other four factors leading to the evaluator's finding that defendant was a sexually violent predator. The court later adopted the evaluator's findings.

¶ 87 As a result, any error in finding that defendant was not employed full time was harmless under Crim. P. 52(a). Defendant has not challenged the basis for the findings of the other four factors, and the evaluator was only required to find that defendant met four of the factors to classify defendant as a high-risk offender. Therefore, we conclude that ample evidence supported the trial court's finding that defendant was highly likely to reoffend, and that these findings supported a conclusion that defendant is a sexually violent predator.

## VI. The Lifetime Supervision Act is Constitutional

¶ 88 Defendant argues here, for the first time, that the Sex Offender Lifetime Supervision Act (SOLSA) is unconstitutional because it violates (1) the right to a jury trial; (2) substantive due process; (3) procedural due process; (4) equal protection; (5) the prohibition against cruel and unusual punishment; (6) the separation of powers doctrine in the Colorado Constitution; and (7) the privilege against self-incrimination. These issues have been previously resolved by divisions of this court. *See, e.g., People v. Dash,* 104 P.3d 286, 290–93 (Colo.App.2004)(SOLSA does not violate the procedural or substantive prongs of the Due Process Clause, the Equal Protection Clause, the Eight Amendment's prohibition of cruel and unusual punishment, or the doctrine of separation of powers); *People v. Oglethorpe,* 87 P.3d 129, 133–36 (Colo.App.2003) (defendants charged as sex offenders under SOLSA are not entitled to have a jury determine whether they are likely to reoffend; SOLSA does not violate the procedural or substantive prongs of the Due

Process Clause, the Equal Protection Clause, the Eighth Amendment's prohibition of cruel and unusual punishment, the separation of powers doctrine, or the Fifth Amendment privilege against compelled self-incrimination); *People v. Strean,* 74 P.3d 387, 393–95 (Colo.App.2002)(SOLSA does not violate the procedural or substantive prongs of the Due Process Clause, the Equal Protection Clause, or the doctrine of separation of powers). We are persuaded by the analysis in these cases, and we rely on them here. As a result, we reject defendant's arguments, including his assertion that the decisions rendered by the various divisions were wrongly decided.

## VII. Conclusion

¶ 89 Normally, our decision to reverse the sentence in this case would lead us to remand to the trial court for resentencing. However, this case presents unusual circumstances that allow us to resolve this appeal differently.

¶ 90 First, defendant did not request the remedy of a new sentencing hearing as part of his argument that the sentences for the paired counts should not be consecutive. Rather, he asserted that the sentences for the paired counts "must be concurrent to each other."

¶ 91 Second, we have the authority on review to "substitute for the sentence under review any penalty that was open to the sentencing court other than granting probation or other conditional release." § 18–1–409(3), C.R.S.2012. *See also People v. Fuller,* 791 P.2d 702, 708 (Colo.1990) (relying on § 18–1–409(3) to change a consecutive sentence to a concurrent sentence); *People v. Edwards,* 198 Colo. 52, 58, 598 P.2d 126, 130 (1979)(same).

¶ 92 Third, the trial court clearly and unequivocally stated that it intended to impose the maximum sentence in this case. As a result, we clearly understand the trial court's intent. In these unusual circumstances, any remand for an additional sentencing hearing is not necessary—and would not promote judicial efficiency—because we conclude that it is not reasonably probable that the trial court would impose any sentence less than

the maximum. *See People v. Coelho*, 89 Cal. App.4th 861, 889, 107 Cal.Rptr.2d 729, 751 (2001) ("[R]eviewing courts have consistently declined to remand cases [for resentencing] where doing so would be an idle act that exalts form over substance because it is not reasonably probable the court would impose a different sentence.").

¶ 93 We hold that the consecutive sentences for the two counts in each pair are illegal, and that the proper relief is to order that the sentences for the two counts in each pair be served concurrently. Thus, the sentences for the following counts must be concurrent: 2 (twenty-four years) and 3 (twenty-four years); 9 (twenty-four years) and 10 (twenty-four years); 11 (twenty-four years) and 12 (twenty-four years); 14 (twenty-four years) and 15 (twenty-four years); and 19 (twelve years) and 20 (twenty-four years). By making the sentences on the two counts in each pair concurrent, we reduce the aggregate indeterminate sentence in this case by 108 years, subtracting twenty-four years for counts 2 and 3; twenty-four years for counts 9 and 10; twenty-four years for counts 11 and 12; twenty-four years for counts 14 and 15; and twelve years for counts 19 and 20.

¶ 94 As a result, we reduce the aggregate indeterminate sentence in this case from 300 years to life to 192 years to life, which is the maximum sentence possible in light of our analysis. We remand this case only for the trial court to amend the mittimus to reflect the concurrent sentences for the two counts in each pair; to show that the sentences for all the other counts remain the same; and to state that the aggregate indeterminate sentence in this case is 192 years to life.

¶ 95 The judgment of conviction is affirmed, the sentence is reversed as to the consecutive sentencing for the five pairs of counts and otherwise affirmed, and the case is remanded to the trial court to amend the mittimus as directed in this opinion.

JUDGE RICHMAN concurs.

JUDGE J. JONES concurs in part and dissents in part from the denial of rehearing.

1. The People also contend in their petition that the division erred in considering various sources of information in determining whether the paired offenses were supported by identical evidence.

JUDGE J. JONES dissenting in part from the denial of rehearing.

¶ 96 The People have petitioned for rehearing, contending that the division erred in construing subsection 18-1.3-1004(5)(a), C.R.S. 2012, which requires that any sentence for a sex offense be served consecutively to the sentences for any "additional crimes arising out of the same incident as the sex offense . . . ."[1] The majority opinion, as now modified, holds that "additional" should be construed as divisions of this court have construed "separate" in the crime of violence statute, subsection 18-1.3-406(1)(a), C.R.S. 2012, such that a crime is "additional" for purposes of subsection 18-1.3-1004(5)(a) only if it is supported by different evidence than that supporting the sex offense. It therefore holds that subsection 18-1- 408(3), C.R.S. 2012, the general sentencing statute applying to convictions supported by identical evidence, applies to pairings of defendant's multiple sexual assault convictions.

¶ 97 I now believe that conclusion is wrong. Indeed, it appears to me that the majority's interpretation of subsection 18-1.3-1004(5)(a) contravenes no fewer than five well-established canons of statutory construction, namely: (1) unless terms in a statute are specifically defined, we must give them their plain and ordinary meanings; (2) where the General Assembly uses different terms in different statutes, we presume the General Assembly intended different meanings; (3) we cannot limit the effect of a statute in a way not suggested or demanded by its text; (4) we must construe a statute so that no part of it is rendered meaningless or superfluous; and (5) where two statutes address a particular subject, and conflict, we must apply the one that addresses the subject more specifically.

¶ 98 Subsection 18-1.3-1004(5)(a) provides:

Any sex offender sentenced pursuant to subsection (1) of this section and convicted of one or more additional crimes arising

Because of my resolution of the statutory interpretation issue, I need not address that contention. But I would not grant rehearing to address it.

out of the same incident as the sex offense shall be sentenced for the sex offense and such other crimes so that the sentences are served consecutively rather than concurrently.

¶ 99 In construing this statutory provision, we must strive to discern and give effect to the General Assembly's intent. *Romero v. People*, 179 P.3d 984, 986 (Colo.2007). To do this, we first look to the statute's plain language, giving the words and phrases therein their plain and ordinary meanings. *People v. Perez*, 238 P.3d 665, 669 (Colo.2010).

¶ 100 The majority notes the plain meaning of "additional," quoting a dictionary definition: "existing or coming by way of addition: ADDED, FURTHER." *Webster's Third New International Dictionary* 24 (2002). This definition seems straightforward enough, and I see nothing in the context in which the statute uses the term that leads me to believe this definition should not apply. *See United States v. Costello*, 666 F.3d 1040, 1043–44 (7th Cir.2012) (noting that meaning depends largely on context, and that dictionary definitions therefore should be used with great caution); *see also People v. Janousek*, 871 P.2d 1189, 1196 (Colo.1994) (looking to dictionary definitions to discern the meanings of undefined terms in a criminal statute). Other than noting that the term "additional" modifies the word "crime," the majority says nothing else about the context in which the term is used that justifies its limiting construction. With all due respect, I do not see why the fact "additional" modifies "crime" means the statute applies only to crimes not supported by identical evidence.

¶ 101 In my view, applying the plain meaning of "additional" to subsection 18-1.3-1004(5)(a), "additional crimes" are any crimes arising out of the same incident as the sex offense for which the defendant is sentenced under subsection 18-1.3-1004(1)(a). That is, they are crimes in addition to – one could say, other than – the subject sex offense if they arose out of the same incident as the subject sex offense.

¶ 102 The majority does not apply this plain meaning of the term. Instead, it elects to construe the term in the same way as "separate" has been construed in subsection 18-1.3-406(1)(a), the crime of violence sentencing statute, because the People have not provided any support for their argument beyond citing the dictionary definition – the commonly understood meaning – of "additional." That reasoning is flatly contrary to the principle that we apply the plain meaning of a term unless a contrary intent is manifest. And I disagree with the majority that the fact there is a general rule – as set forth in section 18-1-408(3) – expresses such an intent. A rule may be subject to exceptions, and it seems to me the General Assembly created such an exception in subsection 18-1.3-1004(5)(a).

¶ 103 This leads to the second canon of statutory construction contravened by the majority's interpretation. Subsection 18-1.3-406(1)(a) uses the term "separate" but subsection 18-1.3-1004(5)(a) uses the term "additional." As the majority notes, we must presume that the General Assembly's choice of language was deliberate. *See People v. Guenther*, 740 P.2d 971, 976 (Colo.1987); *People v. Gookins*, 111 P.3d 525, 528 (Colo.App.2004). Where the General Assembly uses different terms in different statutes, that "signals an intent on the part of the General Assembly to afford those terms different meanings." *Robinson v. Colo. State Lottery Div.*, 179 P.3d 998, 1010 (Colo.2008); *accord Carlson v. Ferris*, 85 P.3d 504, 509 (Colo.2003) (terms "safety belt" and "safety belt system" have different meanings); *see also Colo. Oil & Gas Conservation Comm'n v. Grand Valley Citizens' Alliance*, 2012 CO 52, ¶ 13, 279 P.3d 646; *Colo. Div. of Employment & Training v. Accord Human Resources, Inc.*, 2012 CO 15, ¶¶ 16–18, 270 P.3d 985 (applying this principle and holding that the terms "employer" and "employing unit" have different meanings).

¶ 104 Though the term "separate," as used in the crime of violence statute, may be susceptible of an interpretation meaning not supported by identical evidence, the term "additional," as used in subsection 18-1.3-1004(5)(a), is not, and the majority cites no authority of any kind supporting such an interpretation of that term. Any crime arising out of the same incident as a subject sex offense is in addition to the subject sex of-

fense. This is so regardless whether the other crime is supported by evidence identical to that supporting the sex offense. Simply put, the terms "separate" and "additional" have different meanings: "additional" is broader than "separate." I think we must presume that the General Assembly was aware of the difference and acted deliberately in using "additional" in subsection 18-1.3-1004(5).(a). It appears that in choosing a different term with a different, broader meaning, the General Assembly sought to treat sex offenses in a particular way. We should give effect to that intent.

¶ 105 The majority's interpretation of subsection 18-1.3-1004(5)(a) allows consecutive sentencing in some cases where an additional crime arises out of the same incident as the subject sex offense, but not others. The majority's interpretation thus has the effect of adding the clause "unless the additional crimes are supported by evidence identical to that supporting the sex offense" to the end of the subsection. I see no textual (or extratextual) support for imposing that limitation. A statutory term used in its ordinary sense should not be limited by a forced, subtle, or technical construction. *Colo. Fuel & Iron Corp. v. Indus. Comm'n*, 152 Colo. 256, 260, 381 P.2d 267, 269 (1963). Similarly, we may not "create an addition to a statute that the plain language does not suggest or demand." *Spahmer v. Gullette*, 113 P.3d 158, 162 (Colo. 2005); *see also Jones v. People*, 155 Colo. 148, 154, 393 P.2d 366, 369 (1964) (a court may not change a law enacted by the legislature); *People v. Adams*, 128 P.3d 260, 262 (Colo. App.2005) ("[W]e will not create an exception to a statute that its plain meaning does not suggest or demand.") (citing *A.C. v. People*, 16 P.3d 240, 243 (Colo.2001)).

¶ 105 The majority's interpretation also has the effect of rendering subsection 18-1.3-1004(5)(a) meaningless where, as in this case, the "additional crimes" are crimes of violence. This is because the majority's interpretation of subsection 18-1.3-1004(5)(a) means that it will apply no differently than subsection 18-1.3-406(1)(a) applies in such circumstances. And such circumstances will exist in many cases. I would read subsection 18-1.3-1004(5)(a) so that it is not rendered meaning-less or superfluous in those circumstances. *See People v. Cross*, 127 P.3d 71, 79 (Colo. 2006); *Spahmer*, 113 P.3d at 162.

¶ 106 Of the two statutes potentially applicable here, subsections 18-1-408(3) and 18-1.3-1004(5)(a), the latter is obviously more specific. Because subsection 18-1.3-1004(5)(a) allows for consecutive sentencing in circumstances in which subsection 18-1- 408(3) does not, and therefore the two are in conflict, we must apply it rather than subsection 18-1-408(3) in this case. § 2-4-205, C.R.S. 2012; *People v. Cooper*, 27 P.3d 348, 355–57 (Colo. 2001) (holding the specific sentencing statute relating to sex offenders applied over a general sentencing statute pertaining to felony convictions); *People v. J.J.H.*, 17 P.3d 159, 163 (Colo.2001); *People v. Weller*, 679 P.2d 1077, 1082 (Colo.1984).

¶ 107 For these reasons, I respectfully dissent, in part, from the majority's decision to deny the People's petition for rehearing.