COLORADO COURT OF APPEALS                                    2017COA108

Court of Appeals No. 15CA1235
Boulder County District Court No. 14CR552
Honorable Andrew R. Macdonald, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Fredrick Leroy Allman,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED

Division V
Opinion by CHIEF JUDGE LOEB
Davidson* and Casebolt*, JJ., concur

Announced August 10, 2017

Cynthia H. Coffman, Attorney General, Kevin E. McReynolds, Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Lauretta A. Martin Neff, Alternate Defense Counsel, Bayfield, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1 Defendant, Fredrick Leroy Allman, appeals the judgment of conviction entered on jury verdicts finding him guilty of eight counts of identity theft pursuant to section 18-5-902(1)(a), C.R.S. 2016. He also appeals a number of sentencing issues. We affirm.

I. Background

¶ 2 In the summer of 2013, Allman met the victim, an elderly widower, at a social event. Using the alias "John Taylor," Allman presented himself to the victim as a businessman who had recently moved from Washington to Colorado. At some point, upon establishing a rapport with the victim, Allman asked him if he could temporarily live in the victim's basement while he adjusted to life in Colorado. The victim agreed.

¶ 3 Although Allman's tenancy was initially intended to be a temporary stay, it evolved into a semipermanent one. In total, Allman lived with the victim for approximately five months and, during the course of that time, he ingratiated himself with the victim and gained the victim's trust.

¶ 4 In December 2013, the victim left for a planned vacation in Australia. Immediately after the victim's departure, Allman gained access to the victim's bank accounts and stole money from them.

Allman also opened several credit cards in the victim's name. And, by the time the victim returned to Colorado five weeks later, Allman had moved out of his home, taken the victim's car, and obtained over $40,000 of credit in the victim's name. Moreover, because Allman had been using an alias, police officers were initially unable to determine his whereabouts.

¶ 5 Eventually, on March 18, 2014, Allman was arrested while attempting to purchase a new car with funds from an account that the police had been monitoring.[1] He was subsequently charged with twelve felonies, including one count of theft of over $500 from an at-risk adult (Count 1), one count of aggravated motor vehicle theft (Count 3), eight counts of identity theft (Counts 2, 4, 5, 6, 7, 8, 9, and 10), and two counts of forgery (Counts 11 and 12).

¶ 6 A jury convicted Allman on all counts. Both at trial and at sentencing, counsel for Allman objected to the eight counts of identity theft, arguing that identity theft, as charged in this case,

---

[1] At the time of his arrest, Allman had in his possession copies of the victim's personal password lists and identifying information, as well as personal and financial information belonging to other senior citizens Allman had come to know in Colorado. It was later determined that Allman was also wanted on an outstanding warrant in Oregon for conduct similar to that in this case.

2

constituted a continuing course of conduct of stealing a single victim's identity and should therefore merge into one conviction and sentence. The trial court overruled these objections and imposed consecutive sentences for Counts 1, 2, 3, 4, and 5, totaling fifteen years in the custody of the Department of Corrections, concurrent prison sentences for Counts 6, 7, 8, 9, 10, and 11, and a ten-year sentence to probation for Count 12, which would run consecutively to Allman's fifteen-year prison term, but concurrently with his parole, with the option of early termination if Allman paid the full amount of restitution ordered by the court.

## II.    Identity Theft

¶ 7      Allman's primary contention on appeal is that his convictions for eight counts of identity theft under section 18-5-902(1)(a) are unconstitutionally multiplicitous because identity theft is a continuing crime where, as here, he stole the identity of only one victim. Thus, Allman argues, all eight convictions for identity theft must merge into one conviction for that offense. We disagree and conclude, as a matter of first impression, that the crime of identity theft under section 18-5-902(1)(a) is not a continuing course of

3

conduct and, therefore, each discrete act of identity theft under that subsection is a separately chargeable offense.

### A. Applicable Law and Standard of Review

¶ 8 "The Double Jeopardy Clauses of the United States and Colorado Constitutions protect an accused against being twice placed in jeopardy for the same crime." *Woellhaf v. People*, 105 P.3d 209, 214 (Colo. 2005); *see also* U.S. Const. amend V; Colo. Const. art II, § 18. The doctrine of multiplicity, which implicates Double Jeopardy principles, prohibits a defendant from receiving multiple punishments for a series of repeated acts that occurred as a part of a continuing course of conduct. *See Woellhaf*, 105 P.3d at 214-15, 220. However, the Double Jeopardy Clauses "[do] not prevent the General Assembly from [specifically authorizing] multiple punishments based upon the same criminal conduct." *Id.* at 214. Thus, where the General Assembly has not defined a crime as continuous, a defendant may be punished for each separate criminal act. *See People v. McMinn*, 2013 COA 94, ¶ 29 (noting that the doctrine of continuing crimes applies only where the General Assembly has unmistakably communicated its intent to create such an offense).

¶ 9     In order to determine whether a crime is a continuing course of conduct, we apply the analysis articulated in *People v. Thoro Products Co.*, 70 P.3d 1188, 1192-93 (Colo. 2003) (discussing the doctrine of continuing offenses in the context of statutes of limitations); *see also People v. Zadra*, 2013 COA 140, ¶ 78 (holding that, for Double Jeopardy purposes, a series of materially false statements over a short period of time does not constitute a single instance of perjury for which there can only be one charge), *aff'd*, 2017 CO 18; *McMinn*, ¶¶ 28-29 (in the context of a Double Jeopardy analysis, concluding that the offense of vehicular eluding is not a continuing offense).

¶ 10    First, we consider "the explicit language of the substantive criminal statute" and determine whether it "compels" the conclusion that the offense is continuing. *People v. Johnson*, 2013 COA 122, ¶ 11. In reviewing the language of the statute, we "give words their plain and ordinary meaning." *Id.* at ¶ 7; *see also* § 2-4-101, C.R.S. 2016 (In construing a statute, "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage."). "Where the statutory language is clear and unambiguous, we do not resort to legislative history or

further rules of statutory construction." *Smith v. Exec. Custom Homes, Inc.*, 230 P.3d 1186, 1189 (Colo. 2010).

¶ 11 Only if we conclude that the statutory text is ambiguous do we proceed to the second step of the *Thoro* analysis and examine the nature of the crime involved and whether it "is such that the General Assembly 'must assuredly have intended' [the offense] be treated as [a continuing one]." *See Thoro*, 70 P.3d at 1193 (quoting *Toussie v. United States*, 397 U.S. 112, 115 (1970)); *see also* § 2-4-203, C.R.S. 2016 (detailing various aids in construction where a statute is ambiguous).

¶ 12 We review de novo a claim that multiplicitous convictions violate a defendant's constitutional protection against Double Jeopardy. *McMinn*, ¶ 18. "Determining whether a particular violation of law constitutes a continuing offense is primarily a question of statutory interpretation," *People v. Lopez*, 140 P.3d 106, 108 (Colo. App. 2005), and is, therefore, also reviewed de novo, *see Johnson*, ¶ 7. However, overlaying our inquiry is a strong presumption against interpreting criminal offenses as continuing. *Thoro*, 70 P.3d at 1193 (citing *Toussie*, 397 U.S. at 115); *McMinn*,

¶ 29 (perceiving no "unmistakable intent" to create the offense of vehicular eluding as a continuing crime).

## B. Analysis

¶ 13     As pertinent here, a person is guilty of identity theft in Colorado if he or she

> *[k]nowingly uses* the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority with the intent to obtain cash, credit, property, services, or any other thing of value or to make a financial payment.

§ 18-5-902(1)(a) (emphasis added).  For the reasons below, we conclude that the plain language of this statute is unambiguous and indicates that the General Assembly did not intend for this offense to be a continuing crime.

¶ 14     In examining the plain language of section 18-5-902(1)(a), we initially note that the word "uses" is not defined anywhere in either the elemental identity theft statute, *see* § 18-5-902, or in the general definitional statute for identity theft and related offenses, *see* § 18-5-901, C.R.S. 2016.

¶ 15     Relying on the rules of grammar, we first conclude that, in the subsection at issue, the mens rea "knowingly" describes the actus

7

reus "uses." Thus, in this context, the word "uses" is a verb. Next, we consider the dictionary definition of the verb "use." *See* § 2-4-102, C.R.S. 2016 ("The singular includes the plural, and the plural includes the singular."); *see also People v. Fioco*, 2014 COA 22, ¶ 19 ("[W]hen construing statutory terms, '[w]e have frequently looked to the dictionary for assistance in determining the plain and ordinary meaning of words.'" (quoting *People v. Forgey*, 770 P.2d 781, 783 (Colo. 1989))).

¶ 16    Black's Law Dictionary defines the verb "use" as "[t]o employ for the accomplishment of a purpose; to avail oneself of." Black's Law Dictionary 1776 (10th ed. 2014); *see also* Webster's Third New International Dictionary 2523 (2002) (defining "use" similarly). In turn, the verb "employ" is defined as "1. To make use of. 2. To hire. 3. To use as an agent or substitute in transacting business." Black's Law Dictionary 638 (10th ed. 2014) (emphasis omitted). We find these definitions instructive, because each connotes a discrete action, as opposed to a sustained or continuous one.

¶ 17    The verb "uses" in subsection (1)(a) describes the object clause of the sentence, namely, "the personal identifying information, financial identifying information, or financial device of another."

§ 18-5-902(1)(a). In that regard, the object clause does not describe another's *identity*, as Allman argues, but another's personal *belongings*, which are means of authenticating one's identity.

¶ 18    In addition, the final verb clause of subsection (1)(a) describes the crime of identity theft as including the unauthorized use of another's belongings "*to make a financial payment.*" *Id.* (emphasis added). Here, too, the statute describes a singular act, as opposed to a continuing course of conduct. In our view, the use of another's personal or financial information to make a single financial payment supports the conclusion that subsection (1)(a) does not describe a continuing course of conduct.

¶ 19    Allman's reliance on *People v. Pérez*, 129 P.3d 1090, 1092-93 (Colo. App. 2005), in which a division of this court held that the crime of criminal impersonation was a continuing offense, is misplaced. To commit the crime of impersonation, one must "knowingly . . . *assume*[] a false or fictitious identity." § 18-5-113(1), C.R.S. 2016 (emphasis added). In contrast, to commit the crime of identity theft under section 18-5-902(1)(a), one must "knowingly *use*[] the personal identifying information, financial identifying information, or financial device of another." The

9

difference in language is significant, and, in our view, assuming a person's identity is not the same actus reus as using, for example, someone's credit card or other financial device, notwithstanding that both offenses are a species of fraud.

¶ 20   Finally, the crime of identity theft under section 18-5-902(1)(b) may well constitute a continuing offense, although we need not resolve that issue. Under subsection (1)(b), a person commits identity theft through the unauthorized *possession* of another's information or financial device with the intent to use it for some benefit in the future. Crimes of possession have typically been viewed as continuing. *See, e.g.*, *People v. Zuniga*, 80 P.3d 965, 968-70 (Colo. App. 2003) (concluding that theft by receiving is a continuing crime because "retaining" is akin to "possession," which "connotes something other than mere momentary possession"). To read the language "uses the personal identifying information, financial identifying information, or financial device of another without permission or lawful authority," § 18-5-902(1)(a), as describing a continuing course of conduct that encompasses both active use *and* inactive possession would potentially render subsection (1)(b) superfluous. *See St. Vrain Valley Sch. Dist. RE-1J*

*v. A.R.L.*, 2014 CO 33, ¶ 23 ("In interpreting a statute, whenever possible, we give each word independent effect so that no word is rendered superfluous.").

¶ 21    In sum, we conclude that, according to the plain meaning of "uses" in section 18-5-902(1)(a), the General Assembly has authorized punishment for each discrete, unauthorized use of a victim's "personal identifying information, financial identifying information, or financial device," with the intent to obtain some benefit "or to make a financial payment." *See* § 18-5-902(1)(a). Therefore, the crime of identity theft under subsection (1)(a) is not a continuing offense for purposes of Double Jeopardy. Rather, the offense is committed on each occasion where "all of the [statutory] elements are complete," *People v. Flagg*, 18 P.3d 792, 794 (Colo. App. 2000) (quoting *People v. Bastian*, 981 P.2d 203, 205 (Colo. App. 1998).[2]

---

[2] Although several courts across the country have addressed the question of whether identity theft is a continuing crime, Allman does not cite, nor have we found, any decision concluding that identity theft is a continuing crime for purposes of Double Jeopardy where the statutory language at issue was identical or similar to that in section 18-5-902(1)(a). *Compare People v. Mitchell*, 78 Cal. Rptr. 3d 855, 864-66 (Cal. Ct. App. 2008) (identity theft is not a

¶ 22    Accordingly, we reject Allman's contention that all eight of his identity theft convictions are multiplicitous.

### III.    Sentencing Issues

¶ 23    Allman next raises five contentions related to his sentences. First, he contends that, because identity theft is a continuing crime, his sentences for those counts should merge. Second, in the alternative, he contends that all eight of his identity theft sentences should run concurrently because they are based on identical evidence. Third, he contends that his sentences for two counts of forgery should run concurrently to each other and to one of his sentences for identity theft because each count is based on identical evidence. Fourth, Allman contends that his consecutive sentence to probation for one count of forgery (Count 12) was illegal (or at least an abuse of discretion) because the court sentenced him to the custody of the Department of Corrections on all other counts and he received a concurrent sentence on his other forgery count (Count

continuing offense even where defendant only stole from one victim), *and State v. Green,* 172 P.3d 1213, 1218 (Kan. Ct. App. 2007) (same), *with State v. Leyda,* 138 P.3d 610, 337-38 (Wash. 2006) (identity theft is a continuing crime), *superseded by statute as stated in In re Newlun,* 240 P.3d 795 (Wash. Ct. App. 2010), *and State v. Ramirez,* 633 N.W.2d 656, 661 (Wis. Ct. App. 2001) (same).

12

11).  Fifth, Allman contends that his sentence on Count 1 for theft from an at-risk adult should run concurrently to his other sentences, because the jury could have relied on identical evidence with regard to that offense.  We disagree with each of these contentions.

### A.    Applicable Law and Standard of Review

¶ 24    We review sentencing decisions that are within the sentencing court's statutory authority for an abuse of discretion "because the trial court's 'familiarity with the facts of the case' places it 'in the best position to fix a sentence that reflects a balance of the relevant considerations.'"  *People v. Torrez*, 2013 COA 37, ¶ 71 (quoting *People v. Vigil*, 718 P.2d 496, 507 (Colo. 1986)).

¶ 25    Where the defendant argues that a court exceeded its statutory sentencing authority, "[o]ur inquiry . . . requires us to interpret statutes."  *People v. Jenkins*, 2013 COA 76, ¶ 12.  We review such issues de novo.  *Id.*

¶ 26    Where a defendant has been charged with multiple counts for a continuing crime, those convictions should merge at sentencing.  *See Woellhaf*, 105 P.3d at 214-15, 220.

¶ 27    Where a defendant is convicted of two or more offenses that are supported by identical evidence, "the sentences imposed [for those offenses] *shall* run concurrently." § 18-1-408(3), C.R.S. 2016 (emphasis added).  However,

> [a] sentencing court is mandated to impose concurrent sentences *only* when the evidence will support no other reasonable inference than that the convictions were based on identical evidence.  In all other instances, the trial court retains its sentencing discretion, and its decision must be upheld unless the trial court abused its discretion.

*Juhl v. People*, 172 P.3d 896, 900 (Colo. 2007) (emphasis added) (citation omitted).

¶ 28    In lieu of a prison sentence, a court may impose probation. The probationary power of the court is as follows:

> When it appears to the satisfaction of the court that the needs of justice and the best interest of the public, as well as the defendant, will be served thereby, the court may grant the defendant probation for such period and upon such terms and conditions as it deems best.

§ 18-1.3-202(1), C.R.S. 2016.  The statute accordingly delegates broad authority to sentencing courts to consider the availability, conditions, and duration of a probationary sentence.  *See Jenkins*, ¶ 39 (concluding that the probation statutes give trial courts broad

14

powers to craft appropriate conditions of probation).  The purpose of this authority is to ensure that sentencing courts "retain flexibility in order to best serve the ends of justice and the interests of the public."  *People v. Guatney*, 214 P.3d 1049, 1052 (Colo. 2009).

## B.    Analysis

¶ 29    Allman first contends that his sentences for identity theft are multiplicitous and, thus, his sentences for those counts should merge.  Because we have already concluded that Allman was properly charged with, and convicted of, eight separate counts of identity theft, we conclude that his sentences for those counts do not merge.  *See Patton v. People*, 35 P.3d 124, 129 (Colo. 2001) ("For purposes of both double jeopardy and merger, a defendant may be subjected to multiple punishments based upon the same criminal conduct as long as such punishments are 'specifically authorized' by the General Assembly." (quoting *People v. Leske*, 957 P.2d 1030, 1035 (Colo. 1998))).

¶ 30    Second, we reject Allman's alternative contention that, even if his sentences for identity theft do not merge, those sentences should run concurrently because they are based on identical evidence.  Based on our review of the record, Allman's eight

convictions for identity theft were based on factually distinct evidence:

- Count 2: On December 9, 10, and 12, 2014, Allman, identifying himself as the victim, made several unauthorized transfers from one of the victim's Wells Fargo accounts to another account without the victim's permission.

- Count 4: On December 12, 2013, Allman obtained a Citibank Visa credit card and made several charges to it, in the name of the victim and without the victim's permission.

- Count 5: On December 11, 2013, Allman obtained another Citibank Visa credit card and made several charges to that card, in the name of the victim and without the victim's permission.

- Count 6: On December 11, 2013, Allman obtained a Bill Me Later credit card and made two charges to it, in the name of the victim and without the victim's permission.

- Count 7: On December 30, 2013, Allman obtained a First National Bank of Omaha Visa credit card and made

several charges to it, in the name of the victim and without the victim's permission.

- Count 8: On December 10, 2013, Allman obtained an American Express credit card and made several charges to it, in the name of the victim and without the victim's permission.

- Count 9: Between December 8, 2013, and January 9, 2014, Allman attempted to obtain a Bank of America credit card, in the name of the victim and without the victim's permission.

- Count 10: On December 9, 2014, Allman obtained an American Express credit card and made several charges to that card, in the name of the victim and without the victim's permission.

¶ 31    Because each of these offenses was factually distinct, the trial court was not required to impose concurrent sentences. *See Juhl*, 172 P.3d at 900 ("A sentencing court is mandated to impose concurrent sentences only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence."); *see also* § 18-1-408(3). We perceive nothing in

the record to indicate the court abused its discretion in how it imposed sentences on Allman's identity theft convictions. *Torrez*, ¶ 71.

¶ 32    Third, Allman contends that his sentences for both of his forgery convictions should run concurrently with one another and with his sentence for Count 4 (identity theft) because he used the same Citibank Visa credit card for all three offenses. We disagree.

¶ 33    Count 4 was charged as identity theft based on Allman's use of the victim's information to *obtain* the Citibank Visa without the victim's permission. By contrast, Allman's two forgery convictions were based on the following evidence:

- Count 11: Allman defrauded a liquor store, located at 100 Superior Plaza Way #100, Superior, CO 80027, *by authorizing a credit card payment* at that location.

- Count 12: Allman defrauded another retailer, located at 400 Marshall Road, Superior, CO 80027, *by authorizing a credit card payment* at that location.

¶ 34    The record is clear that neither forgery offense is factually identical to the other, nor is either of them factually identical to Count 4. Therefore, the court was not required to impose

concurrent sentences for these offenses. *See Juhl*, 172 P.3d at 900; *see also* § 18-1-408(3).

¶ 35    Fourth, Allman contends that the sentencing court illegally sentenced him to both the custody of the Department of Corrections and probation. Specifically, he argues that the sentencing court was only authorized to impose an overall sentence either to probation or imprisonment — but not both — notwithstanding that he was convicted of multiple offenses. We disagree.

¶ 36    As an initial matter, we note that a sentence to probation is not ordinarily subject to appellate review unless it was granted contrary to the provisions of section 18-1.3-104(1)(a), C.R.S. 2016, or section 18-1.3-202(1). *See Jenkins*, ¶ 10; *see also People v. Whitlock*, 2014 COA 162, ¶ 29. However, "where, as here, a defendant contends that 'a court has exceeded its statutory authority' in imposing a probationary sentence, appellate review is warranted." *Jenkins*, ¶ 10 (quoting *People v. Rossman*, 140 P.3d 172, 174 (Colo. App. 2006)).

¶ 37    Under section 18-1.3-202(1),

> the court may grant the defendant probation
> for such period *and upon such terms and*
> *conditions as it deems best.* The length of

19

probation shall be subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of the offense of which the defendant is convicted . . . .

(Emphasis added.) Under the plain language of this statute, a sentencing court has broad authority to impose a sentence to probation. *See Jenkins*, ¶ 39. This discretion is limited only by restrictions "derived from statute." *Chism v. People*, 80 P.3d 293, 294 (Colo. 2003).

¶ 38 There are certain limitations on the probationary power of a court.[3] *See, e.g., Veith v. People*, 2017 CO 19, ¶ 4 (holding that a defendant must consent to probation); *People v. Bassford*, 2014 COA 15, ¶ 25 (concluding that a sentencing court may not impose a sentence of incarceration for a single offense and then suspend that sentence and order probation). None of these statutory limitations is at issue in this case.

---

[3] One reason for the broad discretion given to a sentencing court is to ensure that the court "select[s] a sentence, a sentence length, and a level of supervision that addresses the offender's individual characteristics and reduces the potential that the offender will engage in criminal conduct after completing his or her sentence." § 18-1-102.5(1)(e), C.R.S. 2016.

¶ 39    Furthermore, in *People v. Trujillo*, 261 P.3d 485, 487-88 (Colo. App. 2010), a division of this court held that a sentencing court is authorized to impose a sentence of probation that runs consecutively to the end of the defendant's period of incarceration in a separate case.  The division reasoned that there is "no meaningful distinction between an order for a probationary sentence to be served consecutively to the entirety of another sentence, and an order for a probationary sentence to be served consecutively to the incarceration component of another sentence." *Id.* at 488.  We perceive the holding and reasoning in *Trujillo* to be applicable here as well.  In our view, if *Trujillo* permits the imposition of a sentence to probation consecutively to a sentence of imprisonment in *another* case, we see no reason why its rationale should not also encompass the imposition of a sentence to probation that runs consecutively to a sentence of imprisonment for a separate offense in the *same* case.

¶ 40    We are not persuaded by Allman's reliance on *People v. Flenniken*, 749 P.2d 395, 399 (Colo. 1988).  In *Flenniken*, the supreme court held that a trial court was prohibited from sentencing a defendant to both imprisonment and probation for a

21

single offense in the same case. *Id.* Allman argues that *Flenniken* should thus be extended to hold that a sentencing court lacks authority to impose a consecutive sentence to probation for one offense where the court has sentenced the defendant to prison for other offenses in a single case. However, Allman does not cite, nor have we found, any statute or case suggesting that the probationary power of the court is so limited. *See Trujillo*, 261 P.3d at 488-89. Indeed, the sentencing statutes generally, and the text of the probationary power of the sentencing court specifically, are replete with language suggesting that a sentence is indivisible only for each *offense*; nowhere in those statutes are convictions for multiple offenses regarded as a package for purposes of sentencing. *See, e.g.*, § 18-1-102.5(1)(a), C.R.S. 2016 (referring to sentences for each "offense," not for each case); *see also* § 18-1.3-202(1) ("The length of probation shall be subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of *the offense* of which the defendant is convicted . . . .") (emphasis added). Contrary to Allman's argument, as discussed above, we are more persuaded that *Trujillo* provides

the proper analytical framework for resolving this issue. *See Trujillo*, 261 P.3d at 487-88.

¶ 41 In sum, we conclude that, where, as here, a court sentences a defendant for multiple offenses in the same case, it may, within its discretion, impose imprisonment for certain offenses and probation for others — including probation consecutively to a period of incarceration — subject only to statutory limitations. Accordingly, we perceive no error in Allman's consecutive sentence to probation for forgery under Count 12. *See Torrez*, ¶ 71.

¶ 42 Allman also appears to argue that the court abused its discretion by sentencing him both to probation under Count 12 and to imprisonment on all other counts, because a sentence to imprisonment is exclusively punitive, whereas a sentence to probation is exclusively rehabilitative. Again, we disagree. As discussed above, nothing in the applicable statutes prohibits such sentencing. And *Trujillo* expressly recognizes the practical difficulties of ordering a probationary sentence to run concurrently with a sentence to incarceration. *See Trujillo*, 261 P.3d at 488-89. Further, the record shows that the sentencing court relied on a presentencing memorandum from the prosecution recommending

that Allman serve his probation after his period of incarceration to allow him to repay the significant restitution owed in this case.

¶ 43     As noted by a division of this court in *People v. Maxich*, "[r]estitution is part of the criminal sentence rather than merely a debt owed by the defendant to the victim.  Payment of restitution advances the rehabilitative purpose of a probationary sentence." 971 P.2d 268, 269 (Colo. App. 1998) (citation omitted).[4]  Under these circumstances, we perceive no abuse of discretion in the court's imposition of the consecutive sentence to probation on Count 12.

¶ 44     Finally, Allman contends that his sentence on Count 1 for theft from an at-risk adult should run concurrently to his other sentences because the jury was not expressly required to make a specific finding regarding what, exactly, Allman stole from the

---

[4] To the extent that Allman argues that the victim in this case will likely be deceased by the time he completes his prison sentence, and, therefore, the purpose of his probation sentence is futile, he is incorrect.  Where a victim, for purposes of restitution, "is deceased or incapacitated, the person's spouse, parent, legal guardian, natural or adopted child, child living with the victim, sibling, grandparent, significant other . . . *or other lawful representative*," who is "aggrieved by the conduct of [the] offender," is entitled to restitution.  *People v. Lane*, 2014 COA 48, ¶ 44 (emphasis added) (quoting § 18-1.3-602(4)(a), C.R.S. 2016).

victim as the basis for that count. Allman argues that, consequently, the jury could have based its verdict on evidence identical to his other convictions under section 18-1-408(3). Here, too, we disagree.

¶ 45    According to our supreme court, "[t]he mere possibility that the jury may have relied on identical evidence in returning more than one conviction is not sufficient to trigger the mandatory concurrent sentencing provision" set forth in section 18-1-408(3). *People v. Muckle*, 107 P.3d 380, 383 (Colo. 2005); *accord Juhl*, 172 P.3d at 900. "Instead, [section 18-1-408(3)] requires courts to impose concurrent sentences 'only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence.'" *Torrez*, ¶ 33 (quoting *Juhl*, 172 P.3d at 900).

¶ 46    During closing argument, the prosecutor explained to the jury exactly what evidence supported the theft count, stating as follows:

> So in relation to the theft, we're talking about the Victim's bank account, 6005, the account that [the victim] set up specifically to go to Australia, because that is the account that [Allman's] purchases were made from. And the value of those purchases, which you saw, was $1,763.75 and was made over a four-day period, between the 9th and 13th of December. And so you have two questions to answer in

relation to that theft. If you decide that [Allman] stole that money from [the victim]'s Wells Fargo bank account, you then have to go on and decide did [Allman] steal over $500; and, secondly, did [Allman] know that [the victim] was an "at risk" elder? Did he know [the victim] was over 70? . . . So that's the first count involving the bank account. And look at the elements of the theft and decide if you think that is proved beyond a reasonable doubt.

¶ 47     Accordingly, under these circumstances, we cannot conclude that the sentencing court was required to order a concurrent sentence for Allman's theft conviction. *See Muckle*, 107 P.3d at 383; *see also Torrez*, ¶ 33.

¶ 48     For the reasons stated above, we perceive no error in any of Allman's sentences in this case. *See Torrez*, ¶¶ 71-72.

<h3 style="text-align:center">IV. Conclusion</h3>

¶ 49     The judgment and sentence are affirmed.

JUDGE DAVIDSON and JUDGE CASEBOLT concur.