**Raymond JUHL, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent.**

**No. 06SC637.**

Supreme Court of Colorado, En Banc.

Dec. 17, 2007.

Douglas K. Wilson, Colorado State Public Defender, Pamela A. Dayton, Deputy State Public Defender, Denver, Colorado, Attorneys for Petitioner.

John W. Suthers, Attorney General, Laurie A. Booras, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice MARTINEZ delivered the Opinion of the Court.

We granted certiorari to review the trial court's statutory authority to impose consecutive rather than concurrent sentences for defendant Raymond Juhl's convictions for first degree assault and vehicular assault. Both charges, to which Juhl pleaded guilty, arose out of his head-on collision with the victim's truck after a high-speed chase in which Juhl attempted to elude the police. On appeal, Juhl contended that the sentences imposed for his first degree assault and vehicular assault pleas should run concurrently pursuant to section 18–1–408(3), C.R.S. (2007), which requires that the trial court impose concurrent sentences for convictions

which arise out of the same act or series of acts and are supported by identical evidence. The court of appeals upheld the imposition of consecutive sentences, finding that the charges were not based on identical evidence. *People v. Juhl*, No. 05CA0180, 2006 WL 2372257, 5–6 (Colo.App. Aug.17, 2006).

We find that the court of appeals misinterpreted section 18–1–408(3) when it held that convictions are not supported by identical evidence where each offense necessarily requires proof of an element not required to prove the other offense. Furthermore, we hold that Juhl's convictions for first degree assault and vehicular assault were supported by identical evidence because both convictions were based on one distinct act rather than multiple acts separated by time or place. Consequently, pursuant to section 18–1–408(3)'s mandate, the trial court lacked the authority to impose consecutive sentences where the convictions were supported by identical evidence. We now reverse and return the decision to the court of appeals with directions to remand to the trial court for amendment of the mittimus to reflect that the sentence for vehicular assault is to run concurrent with the sentence for first degree assault.

## I. Facts and Procedural History

On December 4, 2003, Commerce City police officers attempted to stop Raymond Juhl after they witnessed Juhl driving eighty-five miles per hour in a thirty-five mile per hour zone and running a stop sign without stopping.[1] However, Juhl refused to stop, and a high-speed chase ensued. As he later told a police investigator, Juhl thought it would be fun to try and outrun the police. At the time of the chase, Juhl was under the influence of methamphetamine and had a large quantity of methamphetamine in his shirt pocket.

Over the course of the twenty-mile chase, Juhl reached speeds of up to one hundred miles per hour, forced other cars off the road, weaved into the oncoming lane of traffic, cut through a parking lot and a construction site, and disregarded multiple stop signs and red lights. The chase ended when Juhl sped into an intersection, lost control of his vehicle, and struck a small truck head-on. The passenger in the truck, fourteen-year-old Brandon Magnuson, was killed. Julie Ann Bailey, the boy's mother and the driver of the truck, suffered serious injuries, leaving her with long term speech and cognitive difficulties.

On October 24, 2004, Juhl pleaded guilty to five counts: second degree murder, vehicular homicide, first degree assault, vehicular assault, and unlawful possession of a controlled substance with intent to distribute.[2] Based on the trial court's determination, these charges, if all served consecutively, could carry a minimum sentence of thirty-nine years and a maximum sentence of 121 years.[3] Under the terms of the plea agreement, however, the total sentence was to be capped at sixty years imprisonment.

The court sentenced Juhl to twenty-five years for the second degree murder conviction, six years for the vehicular homicide, fifteen years for the first degree assault, three years for the vehicular assault, and ten years for the possession with intent to distribute charge. The court specifically found the following: "[T]he Second Degree Murder, the Vehicular Homicide charges, arise out of the same criminal conduct, vis a vis Brandon Magnuson. The First Degree Assault and Vehicular Assault charges arise out of the same criminal conduct with regard to Mrs. Bailey." The court ordered that the second degree murder sentence run concurrently with the vehicular homicide sentence,

1. Because Juhl pleaded guilty and therefore did not have a trial, the facts of this case were developed during a preliminary hearing on March 12, 2004, and a pretrial motions hearing on September 10, 2004.

2. Section 18–3–103(1), C.R.S. (2007), a class two felony; section 18–3–106(1)(a), C.R.S. (2007), a class four felony; section 18–3–202(1)(c), C.R.S. (2007), a class three felony; section 18–3–205,

C.R.S. (2007), a class five felony; and section 18–18–405, C.R.S. (2007), a class three felony.

3. The trial court made the following statements regarding the possible sentences each conviction could carry: second degree murder (16 to 48 years); vehicular homicide (2 to 6 years); first degree assault (10 to 32 years); vehicular assault (1 to 3 years); and possession with intent to distribute a controlled substance (10 to 32 years).

noting again that "[t]hese offenses arose out of the same acts with regard to Brandon Magnuson." In contrast, the court then ordered that the vehicular assault sentence run "consecutive with" the first degree assault sentence. Finally, the court ordered that the possession with intent to distribute charge be served "concurrent with the sentence imposed on the First Degree Assault and Vehicular Assault charge." Thus, although authorized to impose a sixty-year sentence, the trial court sentenced Juhl to a total of forty-three years. The mittimus reflects this sentence.

On appeal, Juhl challenged the trial court's imposition of consecutive rather than concurrent sentences for the first degree assault and vehicular assault charges. Specifically, Juhl argued that section 18–1–408(3) mandated concurrent sentences because his convictions were based on the same act or series of acts involving one victim and were supported by identical evidence. The court of appeals issued an unpublished decision, in which it held that Juhl's convictions were not supported by identical evidence. *Juhl*, at 5–6. The court of appeals first stated that "[i]f the elements of one charge require proof of at least one fact not required to prove an additional charge, then the evidence in support of the offenses is not identical." *Id.* at 4. The court of appeals then reasoned that vehicular assault required proof that the defendant operated a motor vehicle in a reckless manner, whereas first degree assault required proof that the defendant engaged in conduct that created a grave risk of death to another. *Id.* at 5. Consequently, the court of appeals held that "because each offense necessarily requires proof of an element not required to prove the other offense, the convictions are not supported by identical evidence." *Id.* at 5–6. The imposition of consecutive sentences was affirmed. *Id.* at 6.

We granted certiorari to address whether the court of appeals misinterpreted the mandatory concurrent sentence provision in section 18–1–408(3) when it held that "identical evidence" means identical elements and that the provision therefore did not apply to Juhl's convictions for vehicular assault and first degree assault even though both convictions arose out of a single act and involved a single victim.[4]

## II. Analysis

When a defendant is convicted of multiple offenses, the sentencing court has the discretion to impose either concurrent or consecutive sentences. *Qureshi v. Dist. Court*, 727 P.2d 45, 46–47 (Colo.1986). However, that discretion is statutorily limited by section 18–1–408(3). *Id.* at 47. Under that provision, when the district attorney prosecutes two or more offenses based on the same act or series of acts arising from the same criminal episode and the defendant is found guilty of more than one count on the basis of identical evidence, the sentences imposed must run concurrently. § 18–1–408(2)–(3). Specifically, section 18–1–408(3) states:

*When two or more offenses are charged* as required by subsection (2) of this section *and they are supported by identical evidence,* the court upon application of the defendant may require the state, at the conclusion of all the evidence, to elect the count upon which the issues shall be tried. If more than one guilty verdict is returned as to any defendant in a prosecution where multiple counts are tried as required by subsection

(2) of this section, *the sentences imposed shall run concurrently;* except that, where multiple victims are involved, the court may, within its discretion, impose consecutive sentences.

(Emphasis added). Thus, when multiple convictions involving one victim are supported by identical evidence, the statute strips the court of its standard sentencing discretion and mandates the imposition of concurrent sentences.

---

4. The issue on which we granted certiorari is:
   Whether the court of appeals misinterpreted the mandatory sentence provision in section 18–1–408(3) when it held that "identical evidence" means "identical elements" and there-

   fore, the provision did not apply to Petitioner's convictions for vehicular assault and first degree assault even though both convictions arose out of a single act and involved a single victim.

However, we have previously held that the mere possibility that identical evidence may support two convictions is not sufficient to deprive the court of its discretion to impose consecutive sentences. *People v. Muckle*, 107 P.3d 380, 384 (Colo.2005). A sentencing court is mandated to impose concurrent sentences only when the evidence will support no other reasonable inference than that the convictions were based on identical evidence. *Id.* In all other instances, the trial court retains its sentencing discretion, and its decision must be upheld unless the trial court abused its discretion. *Id.*

As a preliminary matter, we reject the People's argument that this statute does not apply in the instance where the defendant does not proceed to trial, but instead accepts a plea bargain. The People contend that because the statute uses language that generally pertains to trial proceedings, the defendant's right to the imposition of concurrent sentences is lost when he waives his right to a trial and enters a guilty plea. We disagree. We find that the defendant's right to the imposition of concurrent sentencing, pursuant to section 18–1–408(3), applies irrespective of whether the defendant is convicted at trial or by a guilty plea.

In the criminal code, section 18–1–408(3) is found within part 4, which is entitled "Rights of Defendant." Part 4's purpose is outlined in section 18–1–401, C.R.S. (2007), as follows:

> **Purpose.** It is the intent of this part 4 to confer upon every person accused of an offense the benefits arising from said part 4 as a matter of substantive right, in implementation of minimum standards of criminal justice within the concept of due process of law.

Thus, the right to the imposition of concurrent sentences is conferred upon all defendants. It is true that a defendant necessarily waives some rights by pleading guilty, such as his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. *People v. Montour*, 157 P.3d 489, 499 (Colo.2007). However, we stated in *Montour* that the "guilty plea only waives those rights that are incompatible with a guilty plea." *Id.* For example, a defendant does not lose his right to counsel upon entering a guilty plea, but rather retains that right until the case is concluded. *Id.* The right to the imposition of concurrent sentences for convictions arising out of the same act or series of acts that are supported by identical evidence is not waived by a guilty plea.[5] A guilty plea is the equivalent of a conviction. § 16–7–206, C.R.S. (2007) ("The acceptance by the court of a plea of guilty ... acts as a conviction for the offense."); *People v. Flagg*, 18 P.3d 792, 794 (Colo.App.2000) ("A plea of guilty has the same effect as if defendant had been tried before a jury and had been found guilty on evidence covering all the material facts."); *People v. Gallegos*, 950 P.2d 629, 632 (Colo. App.1997) ("A guilty plea acts as a conviction and has the same effect as a verdict rendered by a jury."). Because a guilty plea conviction is the equivalent of a conviction based on a jury verdict, the imposition of the defendant's sentence remains unaffected by the defendant's choice to enter a guilty plea. Thus, as a sentencing statute, section 18–1–408(3) can be applied equally to a conviction that arises from a trial or a conviction that arises from the entry and acceptance of a guilty plea. Irrespective of how the conviction arises, the sentencing court is bound by section 18–1–408(3) when it makes its sentencing determination.

Furthermore, although this court has not yet considered the issue, the Colorado Court of Appeals has consistently applied the concurrent sentencing requirement of section 18–1–408(3) to defendants who entered guilty pleas. For example, the defendant entered a guilty plea in *People v. McAfee*, 160 P.3d 277 (Colo.App.2007), and the court of appeals ap-

---

**5.** The General Assembly could easily have precluded defendants who entered into plea bargains from receiving the right to the imposition of concurrent sentences. One can contrast section 18–1–408(3) with section 18–1–409, C.R.S. (2007), also within part 4, which grants the right of appellate review for felony sentences. This section specifically excludes from review certain sentences arising out of plea bargains. The statute states, "[I]f the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence." § 18–1–409(1).

plied section 18–1–408(3) without any reference to the possibility that the statute might not protect a defendant who accepts a plea bargain. Instead of looking at the evidence presented at trial, the court of appeals merely analyzed the factual basis of the defendant's guilty plea to determine whether the convictions were based on identical evidence. *Id.* at 283; *see also People v. Shepard,* 98 P.3d 905, 907 (Colo.App.2004) (basing identical evidence determination on the prosecution's representations at the providency hearing and the defendant's admission that he understood that to be the factual basis of the plea).

Finally, we note that construing the statute to allow the imposition of a more severe sentence for a guilty plea than for the exact same conviction that resulted from trial would likely raise constitutional concerns. *See, e.g., People v. Mozee,* 723 P.2d 117, 126 (Colo.1986) ("When two criminal statutes prescribe different penalties for identical conduct, a defendant convicted and sentenced under the harsher statute is denied equal protection of the laws."). We cannot find that the General Assembly intended such an unjust and possibly unconstitutional result. *See* § 2–4–201(1)(a), (c), C.R.S. (2007) (stating that when the legislature enacts a statute, it is presumed that that "[c]ompliance with the constitutions of the state of Colorado and the United States" and a "just and reasonable result" are intended by the legislature); *Adams County Sch. Dist. No. 50 v. Heimer,* 919 P.2d 786, 792 (Colo.1996) ("In construing legislation we seek to avoid interpretations that invoke constitutional deficiencies."). Consequently, we conclude that the right to the imposition of concurrent sentences, pursuant to section 18–1–408(3), applies irrespective of whether the defendant proceeded to trial or entered a guilty plea.

■ We also reject the People's argument that because the defendant's plea was subject to a sentencing cap, the propriety of imposing a consecutive sentence is not reviewable on appeal under section 18–1–409. Section 18–1–409(1) states, "[I]f the sentence is within a range agreed upon by the parties pursuant to a plea agreement, the defendant shall not have the right of appellate review of the propriety of the sentence." We have previously interpreted a review of the propriety of the sentence to involve a review of the "intrinsic fairness or appropriateness of the sentence itself taking into account 'the nature of the offense, the character of the offender, and the public interest.'" *People v. Malacara,* 199 Colo. 243, 247, 606 P.2d 1300, 1302–03 (1980) (quoting § 18–1–409(1)). The question of whether the trial court was statutorily prohibited from imposing consecutive rather than concurrent sentences is not a matter of the intrinsic fairness or appropriateness of the sentence, but rather of whether the trial court exceeded its statutory authority in determining the sentence. Thus, section 18–1–409(1) does not preclude our review of the defendant's appeal on this narrow issue.

We now turn to our analysis regarding when section 18–1–408(3) triggers the mandatory imposition of concurrent sentences. We have construed section 18–1–408(3) to mandate the imposition of concurrent sentences in a multiple count situation when the counts are based on the same act or series of acts arising from the same criminal episode and the evidence supporting the counts is identical. *Qureshi,* 727 P.2d at 47. Our caselaw has consistently applied the statute by analyzing the evidence to determine if the separate convictions were based on more than one distinct act and if so, whether those acts were separated by time and place.

In *People v. Muckle,* the defendant shot the victim once in the abdomen while the victim was seated on the couch and then fired a second shot, hitting the victim in the arm as the victim was fleeing the room. 107 P.3d at 383. We found that the acts on which the defendant's heat-of-passion manslaughter and first degree assault convictions were based were sufficiently separate. *Id.* at 383–84. Therefore, the evidence supported a finding that the convictions were based on separate acts, concurrent sentencing was not mandated, and the trial court retained its discretion to impose consecutive sentences. *Id.*

Similarly, in *Qureshi,* we held that concurrent sentences were not required where the defendant's convictions for first degree as-

sault and attempted manslaughter were not supported by identical evidence. 727 P.2d at 47. There, the defendant thrust a knife into the victim's abdomen twice while they were in the kitchen. *Id.* Following the ensuing struggle, the victim asked to use the bathroom and the defendant allowed her to enter the bathroom. *Id.* at 46. After she had closed the door, the defendant forced his way into the bathroom, pushed the victim against the wall, and brought the knife down toward the victim's throat or heart, which the victim blocked, suffering a serious cut to her hand. *Id.* The trial court found that whereas the first degree assault was established by the first stabbings that occurred in the kitchen, it was the later attack that was the basis for attempted manslaughter. *Id.* at 47. Thus, the acts which formed the basis of the two charges were sufficiently distinct such that the convictions were not supported by identical evidence. *Id.*

In sum, we have consistently analyzed "identical evidence" by considering whether the acts underlying the convictions were sufficiently separate. Consequently, we find that the court of appeals incorrectly interpreted "identical evidence" to entail an analysis of the evidence necessary to prove the elements of the offenses charged. The court of appeals held that evidence is identical when one charge requires proof of at least one fact not required to prove an additional charge. *Juhl,* at 4. In effect, the court of appeals applied the "strict elements test" or the *"Blockburger* test" for the merger of lesser included offenses. *See People v. Leske,* 957 P.2d 1030, 1036 (Colo.1998) (explaining the strict elements and *Blockburger* tests). In contrast, we have previously stated that the test for identical evidence is an evidentiary test rather than an elemental test. *Id.* Thus, the court of appeals erred by focusing on the elements of the crimes charged and analyzing whether one charge required proof of at least one fact not necessary to prove the other charge.

■ Furthermore, we also reject the People's contention that the evidence here is not identical because the elements of the vehicular assault charge require the proof of different facts than are required by the elements

of the first degree assault charge. Specifically, the People assert that vehicular assault requires proof that Juhl "recklessly" drove a motor vehicle, which the People argue was proved by Juhl's act of entering the intersection at a high rate of speed and losing control of his vehicle after cutting sharply to the left. In contrast, the first degree assault requires proof of "extreme indifference," which the People contend was proved by Juhl's conduct in engaging in a lengthy high-speed chase while under the influence of methamphetamine just for the "fun" of seeing if he could outrun the police. We reject this approach because, like the court of appeals' analysis, it incorrectly focuses on what evidence is necessarily *required* to prove the elements of a conviction rather than what evidence *supports* the conviction. Although it is correct that the elements of vehicular assault do not necessarily require evidence of attempting to elude the police to show recklessness, it cannot be said that a charge of vehicular assault is not supported by such evidence. As our caselaw reveals, whether two charges are supported by identical evidence is not a strict analysis to determine if one particular fact is necessary to one conviction, but not the other, thereby making the evidence identical or not identical. Rather, whether the evidence supporting the offenses is identical turns on whether the charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different. *See Muckle,* 107 P.3d at 383.

■ Here, Juhl's act of colliding head-on with Mrs. Bailey's truck while he was engaged in a high-speed chase to elude the police was the basis of both the first degree assault and vehicular assault charges. It was this single collision that resulted in serious bodily injury to Mrs. Bailey. Unlike the cases we have previously addressed regarding identical evidence, where there were two shots fired at different times or where two attacks occurred in different places, the act that was the basis of Juhl's first degree assault conviction cannot be logically separated from the act that formed the basis of the vehicular assault conviction. The evidence can support no reasonable inference that the

dual assault convictions were based on acts that were separated by time or place. Both convictions were supported by evidence of the collision with Mrs. Bailey's truck and the circumstances under which that collision occurred.

Furthermore, the trial court made specific findings that the vehicular assault and first degree assault charges arose out of the same criminal episode. Specifically, the trial court found that the second degree murder and vehicular homicide charges arose out of the same criminal conduct, "vis a vis Brandon Magnuson," and that the first degree assault and vehicular assault arose out of the same criminal conduct with regard to Mrs. Bailey. Because the trial court determined that the second degree murder and vehicular homicide charges required concurrent sentencing based on the finding that they arose out of the same criminal conduct and were thus supported by identical evidence, we cannot reasonably conclude that the vehicular assault and first degree assault were not equally supported by identical evidence. Consequently, we find that Juhl's assault convictions were supported by identical evidence and that the trial court was mandated by statute to impose concurrent rather than consecutive sentences for the first degree assault and vehicular assault convictions.

## III. Conclusion

Because the trial court did not have the statutory authority to impose consecutive sentences, we reverse and return the decision to the court of appeals with directions to remand to the trial court for amendment of the mittimus to reflect that the three-year conviction for vehicular assault is to run concurrent with the fifteen-year conviction for first degree assault.

Justice COATS dissents.

Justice COATS, dissenting.

While I agree that the court of appeals went too far in declaring crimes with different elements incapable of proof by identical evidence, I would nevertheless affirm its judgment on other grounds. I believe the majority errs in treating guilty pleas as re-quiring evidentiary support at all, much less as being supported by evidence that is identical to evidence supporting other guilty pleas. Of at least equal significance, however, I believe the majority's explanation for finding section 18–1–408(3) of the revised statutes to be applicable to guilty pleas substantially alters the meaning of "identical evidence." Both because I believe the majority's interpretation of "identical evidence" is unnecessary in this case and because I do not agree with that interpretation in any event, I respectfully dissent.

Although it is not entirely clear from the words of the statute itself, we have long held that the "supported by identical evidence" prerequisite of subsection (3)'s election option applies equally to its prohibition of consecutive sentences for offenses mandatorily joined as acts constituting a single criminal episode. See People v. Anderson, 187 Colo. 171, 529 P.2d 310 (1974). As the majority easily demonstrates, the statute in no way evidences a legislative intent to exempt guilty pleas from this sentencing limitation or to permit longer sentences for convictions acquired by guilty plea, and the very suggestion of such a policy choice appears to be a straw man to be knocked down. Policy notwithstanding, however, guilty pleas, by their very nature, simply cannot be controlled by this statute.

Guilty pleas, by their very nature, are not based on evidentiary proof. They result from a defendant's admission of guilt and the waiver of his right to proof that he committed the elements of a crime. While courts receiving guilty pleas must insure the existence of a factual basis, as a safeguard against erroneous pleas, a factual basis is not an offer of proof, and guilty pleas need not be supported by an offer of proof, much less by actual evidence.

Nor does this difference between convictions acquired by plea and those actually proved at a trial place pleading defendants at a disadvantage or subject them to unequal treatment. Guilty pleas are entirely voluntary and may not be entered without the informed consent of the defendant. Defendants may condition their consent on both charge and sentence concessions and pre-

sumably will not consent to a plea arrangement unless they consider the conditions of the plea sufficiently advantageous. Should a sentence concession or recommendation not be followed by the court, the defendant is entitled to withdraw his plea and insist upon a trial. (The court's forty three year sentence in this case fell well below the agreed cumulative sentence cap of sixty years.)

Nor does the majority attempt to identify the particular evidence used to support each of the assault convictions in this case. Quite the contrary, it explains that the question of identical evidence for purposes of section 18–1–408(3) actually turns on the charges filed against the defendant and whether they are alleged to result from the same act. The effect of this proposition is, of course, not only to reinterpret the "identical evidence" requirement as referring to something other than the evidence actually used to prove each crime, but also to limit the element under consideration to the criminal act alone.

Although we have previously upheld consecutive sentences for crimes committed as part of a single criminal episode upon a demonstration that they were supported by evidence of different criminal acts, *see, e.g.,* *People v. Muckle,* 107 P.3d 380, 383 (Colo. 2005); *Qureshi v. Dist. Ct.,* 727 P.2d 45, 47 (Colo.1986), we have never before held that such crimes are considered to be supported by identical evidence within the meaning of section 18–1–408(3), and therefore require concurrent sentences, *unless* they are supported by evidence of different criminal acts. On its face, the limiting prerequisite of "identical evidence" would seem to be avoided whenever separate convictions are supported by different evidence of any necessary component of an offense, including necessary surrounding circumstances, mental states, absence of justification or excuse, or even motive. And until today, I do not believe we have ever suggested otherwise.

Since a single criminal act can clearly have more than one victim, it is difficult to square the majority rationale with the logic of the legislature's express treatment of criminal episodes involving multiple victims as falling outside the ban on consecutive sentences. *See* § 18–1–408(3). Even a single person can, of course, be victimized in substantially different ways by the same criminal act, and it is not difficult to think of instances in which the legislature has chosen to separately punish harmful consequences, whether or not they were caused by a single criminal act. Can it be reasonable, for instance, to find a legislative intent that an arsonist must escape separate punishment for both arson and deliberate murder, merely because he chooses to commit murder by burning down his victim's house while the victim is asleep inside?

Both constitutional and statutory limitations prevent multiple convictions for offenses that are related in various ways. In the very statute at issue in this case, *see* § 18–1–408(1) and (5), the legislature has barred multiple convictions, for instance, whenever one offense is established by proof of the same or less than all the facts required to establish the commission of another, or whenever one offense differs from another only in the respect that a less serious injury or risk of injury to the same person, property, or public interest or a lesser kind of culpability suffices to establish its commission. These merger provisions represent policy choices concerning the definitions of and relationships among crimes. The ban of subsection (3) on consecutive sentences provides a further limitation based on the nature of the evidence actually relied on to prove each crime, and in my view, it should not be expanded beyond its intended purpose.

Because I believe the majority opinion expands the "identical evidence" prerequisite of section 18–1–408(3) beyond its intended purpose, I respectfully dissent.

Justice EID does not participate.