23CA1250 Peo v Ladeira 03-06-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA1250
El Paso County District Court No. 22CR3110
Honorable William Moller, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Daniel Ladeira Jr.,

Defendant-Appellant.

---

JUDGMENT AFFIRMED IN PART AND REVERSED IN PART, ORDER
AFFIRMED, AND CASE REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE TOW
Dunn and Meirink, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 6, 2025

---

Philip J. Weiser, Attorney General, Austin R. Johnston, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

The Noble Law Firm, LLC, Antony Noble, Bryan Collins, Lakewood, Colorado,
for Defendant-Appellant

¶ 1      Defendant, Daniel Ladeira Jr., appeals his conviction entered after a jury verdict, his sentence, and the trial court's order granting restitution. We reverse the judgment insofar as it imposed consecutive sentences and remand the case to the trial court to amend the mittimus. We otherwise affirm the judgment and the restitution order.

## I. Background

¶ 2      At trial, the jury heard evidence that would support the following findings.

¶ 3      Ladeira engaged in a verbal altercation with his neighbor Brittany Milner, after she yelled at him to slow down while driving down the street. Milner called her husband, James Villegas, who was inside their home, and asked him to come outside. By the time Villegas made it to the street, Ladeira had gone inside his home with his girlfriend.

¶ 4      Villegas and Milner briefly spoke to a neighbor before returning to their home. After a few minutes, Ladeira emerged from his home and stood on his porch, which Villegas witnessed through their front window. Villegas approached Ladeira's property and, from the street, demanded he apologize to Milner. Ladeira then

1

went back inside, emerged shortly thereafter with a gun at his side, and told Villegas, "[s]tep on my property so you can make my day."[1] Villegas responded that he was not on Ladeira's property and, realizing that Ladeira had a gun in his hand, he turned back toward his home to call the police. Ladeira then shot multiple rounds in immediate succession, one of which hit Villegas. After police arrived on the scene, Villegas was taken to the hospital, where he was treated for injuries to his right hip and lower extremities, and was released after ten days.

¶ 5    At the conclusion of both parties' cases-in-chief, the trial court granted Ladeira's request to instruct the jury on self-defense. In response, the prosecution asked to include an initial aggressor instruction, arguing that "[by] bringing out the gun on his own . . . the jury could conclude [Ladeira] is the original aggressor." The trial court agreed, and over defense counsel's objection, it included language about the initial aggressor exception in the jury instruction for the affirmative defense of self-defense.

---

[1] The neighbor also testified that Ladeira made this statement.

¶ 6　　A jury found Ladeira guilty of three felonies (attempted first degree murder, first degree assault, and illegal discharge of a firearm) and three misdemeanors (telephone obstruction, false imprisonment, and driving under the influence).

¶ 7　　Ladeira's sentencing hearing took place on June 8, 2023.  In preparation for the hearing, the trial court reviewed Villegas's victim impact statement, in which he requested restitution but indicated that he did not know the specific amount because he was "still receiving [medical] bills."

¶ 8　　During the sentencing hearing, the prosecution noted that the sentencing for attempted first degree murder and first degree assault should "be run concurrent" because "they arise out of the same conduct."  The court inquired as to whether the prosecution believed the attempted murder and assault charges were "separate crimes of violence," thereby dictating that the court order consecutive sentencing.  *See* § 18-1.3-406(1)(a), C.R.S. 2022.[2]  The prosecution explained that the felonies were not separate crimes of

_____

[2] In 2023, the General Assembly amended the relevant statutory language.  *See* § 18-1.3-406(1)(b), C.R.S. 2024.  We refer to the language in effect at the time of sentencing.

violence and the sentences for these counts should run concurrently because "they come from the same shooting," and that "both the charges found by the jury went to the exact same actions by the defendant with the same victim."

¶ 9　However, later in the hearing, the prosecution backtracked on this position and instead asserted that "if different evidence is required to establish guilt of each of the multiple offenses, they are separate crimes for the purpose of [section 18-1.3-406]." The trial court concluded that the "jury relied upon different evidence based upon different factors that were required to be proven by the People," and it sentenced Ladeira on each count to twenty-four years in the custody of the Department of Corrections for the attempted first degree murder and first degree assault convictions, to be served consecutively.

¶ 10　At the conclusion of the sentencing hearing, the court also granted the prosecution forty-two days in which to request restitution and Ladeira twenty-one days in which to object. On July 19, 2023, the prosecution requested $14,301.23 in restitution. Ladeira timely filed an objection to the restitution amount and requested a hearing on the matter. The court scheduled the

4

hearing for August 31, 2023, which was seven days before the statutory deadline expired on September 7, 2023. *See* § 18-1.3-603(1)(b), C.R.S. 2024 (when determination of the amount of restitution has been deferred at sentencing, that amount must generally be determined within ninety-one days).

¶ 11 The court ordered the prosecution to issue a writ for Ladeira's attendance at the hearing, but the prosecution failed to do so, and Ladeira was not present. Because of a previously scheduled division closure and lack of available coverage, the court was unable to reschedule the hearing for the following week. Over defense counsel's objection, the court found that, based on its lack of availability, "there [was good] cause to continue [the order of restitution] one week to the 14th [of September]."

¶ 12 During the rescheduled hearing, defense counsel renewed its objection to the court's extension of the restitution deadline, which the court overruled. The court imposed $12,739.35 in restitution.

¶ 13 This appeal followed.

## II. Initial Aggressor

¶ 14 Ladeira argues that the trial court erred by instructing the jury on the initial aggressor exception to self-defense. We disagree.

### A. Standard of Review and Applicable Law

¶ 15 "The trial court has a duty to correctly instruct the jury on all matters of law for which there is sufficient evidence to support giving instructions." *Castillo v. People*, 2018 CO 62, ¶ 34. This includes deciding "whether there is sufficient evidence to warrant a jury instruction related to an affirmative defense and any exceptions to such affirmative defense." *Id.* "Whether sufficient evidence exists to support the requested instruction is a question of law that we review de novo." *Id.* at ¶ 32. We view the evidence in the light most favorable to giving the challenged instruction. *Galvan v. People*, 2020 CO 82, ¶ 33.

¶ 16 "For certain crimes that require intent, knowledge, or willfulness, self-defense may be raised as an affirmative defense." *Castillo*, ¶ 38; *see also* § 18-1-704(1), C.R.S. 2024 (defining the affirmative defense of self-defense). The prosecution can defeat a claim of self-defense by "prov[ing] beyond a reasonable doubt that an exception to self-defense applies." *Castillo*, ¶ 40. The initial aggressor exception states that "a person is not justified in using physical force if . . . [they are] the initial aggressor." § 18-1-704(3)(b). "An initial aggressor instruction is warranted

6

when the evidence suggests the defendant initiated the physical conflict by using or threatening imminent use of unlawful physical force." *People v. Roberts-Bicking*, 2021 COA 12, ¶ 33.

¶ 17    "[W]hen the trial court instructs the jury on the affirmative defense of self-defense, it should instruct the jury on . . . any . . . exception to that defense if the exception is supported by *some evidence*." *Galvan*, ¶ 25 (emphasis added). However, in the absence of some evidence in support of a self-defense exception, "trial courts must guard against giving superfluous instructions that limit the affirmative defense of self-defense, as such instructions may be prejudicial." *Id.* at ¶ 32.

### B.    Analysis

¶ 18    As part of its instruction on the affirmative defense of self-defense, the trial court instructed the jury, over Ladeira's objection, that

> [t]he defendant was legally authorized to use physical force upon another person without first retreating if . . . he was not the initial aggressor, or, if he was the initial aggressor, he had withdrawn from the encounter and effectively communicated to the other person his intent to do so, and the other person nevertheless continued or threatened the use of unlawful physical force.

¶ 19     Ladeira contends that this instruction was improper "because there was no evidence admitted at trial to support a finding that Ladeira was the initial aggressor."  The People point out that, upon being confronted by Villegas, Ladeira went inside his home, came back out with a handgun, urged Villegas to "step on [his] property" so that Villegas could "make [Ladeira's] day," and then shot Villegas as he turned around to walk back to his home.

¶ 20     While verbal confrontation alone is insufficient to make a party the initial aggressor, evidence of a defendant's other actions may be sufficient to warrant the instruction.  *People v. Griffin*, 224 P.3d 292, 300 (Colo. App. 2009).  In *Griffin*, a division of this court held that when the defendant left an argument and returned with a gun, the initial aggressor instruction was appropriate.  *Id.*  The evidence introduced in *Griffin* is comparable to what the prosecution presented in this case: after Villegas told Ladeira "they needed to have a conversation," Ladeira went inside and returned displaying a handgun.  That action alone was sufficient to warrant the initial aggressor instruction.  *See id.*

¶ 21     Ladeira contends instead that this case is more similar to *Castillo*.  There, the defendant, over the course of "a matter of

8

seconds, with no break in the action," racked his gun and fired. *Castillo*, ¶¶ 47-48.  The supreme court rejected the district court's view that racking the gun and firing were separable incidents and that the former could be considered an act of initial aggression.  *Id.* at ¶¶ 46-47.  Ladeira argues that, like the actions of the defendant in *Castillo*, his actions were one continuous episode; thus, he could not be considered the initial aggressor.

¶ 22     Further, relying on *People v. Manzanares*, 942 P.2d 1235, 1241 (Colo. App. 1996), Ladeira argues that because his actions were one continuous episode, "the only issue was 'whether [Ladeira] committed any of the crimes charged and, if so, whether the conduct was justified because he had acted in self-defense.'"

¶ 23     Ladeira's reliance on *Castillo* and *Manzanares* is unavailing.  Unlike in *Castillo*, there was evidence here that the act of displaying the gun and the threatening language Ladeira used while doing so were not one continuous episode.  There was evidence from which the jury could have inferred that these actions did not take place over a matter of seconds but, rather, over several minutes.  For example, Ladeira's girlfriend testified he was outside for "maybe five to ten minutes."  And Milner described a protracted phone call with

9

Villegas while he was engaged with Ladeira outside, including hearing Villegas, in apparent response to Ladeira's threat, tell Ladeira that "[he was] not on [his] property." At that point, Milner discontinued their call so she could call the police and then heard the gunshots.

¶ 24 Moreover, in *Castillo*, the evidence showed that the defendant cursed at someone, popped the trunk on the defendant's car, and then got out of the car. The supreme court concluded that this evidence did not demonstrate a threat to use unlawful physical force. In contrast, Ladeira directly threatened unlawful force when he told Villegas to step on his property so he could "make [Ladeira's] day." To the extent Ladeira was referencing the so-called "make my day" law, § 18-1-704.5, C.R.S. 2024, that statute permits the use of deadly force when someone has unlawfully entered a dwelling with the intent to commit a crime therein; it does not apply to merely walking onto someone's property. Thus, Ladeira's comments, viewed in the light most favorable to the People, were a threat to use unlawful force.

¶ 25 Ladeira's reliance on *Manzanares* is also misplaced because there, the evidence was undisputed that the defendant himself had

not engaged in the initial altercation, and as a result "nothing that occurred in that fight [upon defendant's return] provided a basis for giving the instruction." *Manzanares*, 942 P.3d at 1241. Here, the record clearly indicates that Ladeira was part of the initial altercation with Villegas when he exited his home.

¶ 26    In sum, the evidence that Ladeira entered his home, returned with a gun, and threatened unlawful force against Villegas, and then opened fire after Villegas responded to the threat, warranted the initial aggressor instruction. *See Griffin*, 224 P.3d at 300.

¶ 27    Because the initial aggressor exception was supported by some evidence, the court did not err by giving the instruction to the jury.

### III.    Consecutive Sentencing

¶ 28    Ladeira next asserts that the trial court erred by imposing consecutive sentences for attempted first degree murder and first degree assault. We agree.

#### A.    Standard of Review and Applicable Law

¶ 29    "We review the trial court's statutory interpretation and its application of mandatory sentencing statutes de novo." *People v. Reed*, 2013 COA 113, ¶ 69. But "[w]e review a trial court's

sentencing decision for an abuse of discretion." *People v. Herrera*, 2014 COA 20, ¶ 16. "A trial court abuses its discretion only when its ruling is manifestly arbitrary, unreasonable, or unfair." *Reed*, ¶ 42 (quoting *People v. Pearman*, 209 P.3d 1144, 1145 (Colo. App. 2008)). "A trial court also abuses its discretion when it misapplies the law." *Chirinos-Raudales v. People*, 2023 CO 33, ¶ 23.

¶ 30 Under section 18-1.3-406(1)(a), C.R.S. 2022, "a court shall sentence a person convicted of two or more separate crimes of violence arising out of the same incident so that [their] sentences are served consecutively rather than concurrently." Where two or more offenses are brought in a single prosecution, a trial court must impose concurrent sentences when those charges are supported by identical evidence, and do not involve multiple victims. § 18-1-408(3), C.R.S. 2024.

¶ 31 Determining if identical evidence supports two or more crimes is an evidentiary test not an elemental test. *Juhl v. People*, 172 P.3d 897, 902 (Colo. 2007). "[W]hether two charges are supported by identical evidence is not a strict analysis to determine if one particular fact is necessary to one conviction, but not the other . . . ." *Id.* Rather, identical evidence "turns on whether the

12

charges result from the same act, so that the evidence of the act is identical, or from two or more acts fairly considered to be separate acts, so that the evidence is different." *Id.*

## B. Analysis

¶ 32 Ladeira argues that the trial court was required to impose concurrent sentences for attempted first degree murder and first degree assault because both convictions were supported by identical evidence. The People contend that the trial court was correct in imposing consecutive sentences because "differing elements between the two charges required different — and therefore not identical — evidence." Specifically, the People assert that the convictions were not based on identical evidence because (1) attempted first degree murder does not require proof of bodily injury, whereas first degree assault does; and (2) attempted murder requires proof of deliberation, whereas first degree assault does not.

¶ 33 As noted, however, whether a conviction is supported by identical evidence is an evidentiary, not elemental, test. *Id.* In *Juhl,* the supreme court held that the defendant's convictions for first degree assault and vehicular assault, both of which arose out of defendant's head-on collision with the victim while engaged in a

13

high-speed chase to evade police, "were supported by identical evidence because both convictions were based on one distinct act rather than multiple acts separated by time or place." *Id.* at 898. Here, therefore, when applying section 18-1-408(3), the trial court should have considered whether "proof of the elements of both offenses . . . was necessarily inferred from the same fund of evidence." *People v. Espinoza*, 2020 CO 43, ¶ 13.

¶ 34    At trial, the prosecution presented evidence that Ladeira went inside his home, came back outside with a gun, threatened Villegas, and fired multiple shots in succession, one of which struck Villegas and caused serious bodily injury. During its closing argument, the prosecution addressed this evidence and referred to it as proof of the necessary elements for attempted first degree murder and first degree assault. Finally, the prosecution presented testimony that this series of events was a single, criminal episode, rather than distinct acts. *See* § 18-1-408(3). Thus, because Ladeira's convictions for attempted first degree murder and first degree assault were supported by the "same fund of evidence," *see* *Espinoza*, ¶ 13, the trial court abused its discretion when it "incorrectly interpreted 'identical evidence' to entail an analysis of

14

the evidence necessary to prove the elements of the offenses charged." *Juhl*, 172 P.3d at 902.

## IV. Restitution

¶ 35 Finally, Ladeira asserts that the court erred when it extended its own deadline to order the amount of restitution owed.[3] We disagree.

### A. Standard of Review and Applicable Law

¶ 36 "The proper interpretation of the restitution statute is a question of law that we review de novo." *People v. Weeks*, 2020 COA 44, ¶ 11 (*Weeks I*), *aff'd*, 2021 CO 75 (*Weeks II*). "However, the issue of whether good cause exists to extend the ninety-one-day deadline to determine restitution . . . is reviewed for an abuse of discretion." *Id.*

¶ 37 Every order of conviction must include one of four types of restitution orders. § 18-1.3-603(1). Where the information to

---

[3] Ladeira also argues that the trial court erred in multiple ways at the sentencing hearing when it gave the prosecution forty-two days to request restitution. However, Ladeira's claims in his opening brief are single-sentence, conclusory assertions, and he does not flesh out these arguments until his reply brief. Because Ladeira waited until his reply brief to develop these arguments, we decline to consider them. *See People v. Salinas*, 55 P.3d 268, 270 (Colo. App. 2002).

determine the amount of restitution is not available at sentencing, the court shall issue "[a]n order that the defendant is obligated to pay restitution, but that the specific amount of restitution shall be determined within the ninety-one days immediately following the order of conviction, unless *good cause* is shown for extending the time period by which the restitution amount shall be determined." § 18-1.3-603(1)(b) (emphasis added).  "[A]ny finding of good cause must be made expressly and before the court's deadline expires." *Weeks II*, ¶ 40.

### B.    Analysis

¶ 38    Ladeira argues the trial court erred by extending the restitution deadline beyond the statutorily allowed ninety-one days "because the prosecution's failure to issue a writ for Ladeira's attendance at the scheduled restitution hearing was not good cause for an extension of the deadline."  *See* § 18-1.3-603(1)(b).  The People counter that the court granted the extension because of the court's closure, which is a sufficient basis for a finding of good cause.  We agree with the People.

¶ 39    "[A] district court's finding of good cause must rest on the specific facts of the case."  *Weeks I*, ¶ 21.  Generally, a mistake on

16

the part of the prosecutor, without more, is insufficient to issue a good cause extension. *See People v. Turecek*, 2012 COA 59, ¶ 14 (finding the prosecutor's failure to adhere to the court's instructions and timely file an amended notice was not good cause for issuing an extension to determine the amount of restitution owed), *overruled on other grounds by Weeks II*, ¶ 47 n.16 (overruling several Colorado court of appeals cases to the extent that they are inconsistent with the holding in *Weeks II*). But certain circumstances outside the control of the parties or court, such as "the court's docket, counsel's schedules, or the complexity of the dispute [may] warrant a finding of good cause for extending the court's deadline." *Weeks II*, ¶ 44.

¶ 40 The court's statutory deadline to order restitution expired on September 7, 2023. On August 31, 2023, the parties attended a hearing to discuss the restitution requested but were unable to proceed because the prosecution failed to issue a writ for Ladeira's attendance. Based on a pre-scheduled court closure and lack of available coverage, the hearing could not be rescheduled for the following week, and the court found there was good cause to extend the restitution deadline to September 14, 2023.

¶ 41　　We recognize that it was the prosecution's initial misstep in failing to issue the writ that prompted the subsequent extension of the restitution deadline.  However, the court's closure and lack of coverage was the ultimate hurdle that required the extension to go beyond the statutory deadline, which the court explicitly recognized on the record as good cause for extending the deadline.  *Cf. Weeks I*, ¶ 27 ("The trial court's ruling did not explain, and the record does not show, what good cause, if any, existed for that inordinate delay.").  Thus, we cannot find that the trial court abused its discretion by finding good cause to extend the hearing date beyond the ninety-first day.

## V.　　Disposition

¶ 42　　We reverse the judgment insofar as it imposed consecutive sentences.  The case is remanded to the trial court for amendment of the mittimus to reflect concurrent sentences for attempted first degree murder and first degree assault.  We affirm the judgment and restitution order in all other respects.

　　JUDGE DUNN and JUDGE MEIRINK concur.