23CA0639 Peo v Hernandez 07-31-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0639
Weld County District Court No. 21CR466
Honorable Vincente G. Vigil, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Michael Laurence Hernandez,

Defendant-Appellant.

---

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division III
Opinion by JUDGE DUNN
Brown and Schock, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced July 31, 2025

---

Philip J. Weiser, Attorney General, Jessica E. Ross, Senior Assistant Attorney General and Assistant Solicitor General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Andrea R. Gammell, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     A jury convicted defendant, Michael Laurence Hernandez, of second degree murder and engaging in a riot. The district court sentenced him to sixty years in prison. Hernandez appeals the convictions and the sentence. We affirm and remand with directions to correct the mittimus.

## I.     Background

¶ 2     After sparring on social media, Andre Amack and Justus Strand arranged to meet in an alley to fight. Both men brought backup; Amack arrived with Hernandez and three other men, and Strand arrived with the victim and one other man. Once there, Amack and Strand started fighting.

¶ 3     Tensions quickly escalated, resulting in Hernandez shooting and killing the victim. During a later police interview, Hernandez claimed he first shot the victim in the stomach because he thought the victim was reaching for a gun. And Hernandez admitted that, as the victim was running away, he reloaded the gun and fired two more shots at the victim — one of which pierced the victim's brain and killed him.

¶ 4       The prosecution charged Hernandez with second degree murder and engaging in a riot (deadly weapon).[1]

¶ 5       Hernandez did not testify at trial, but his counsel defended on the theory that Hernandez acted in self-defense.  The jury disagreed and convicted him as charged.

¶ 6       The district court sentenced Hernandez to a cumulative sixty-year prison sentence — forty-eight years for second degree murder consecutive to twelve years for engaging in a riot.  The court also accepted Hernandez's admission that he violated the terms of his deferred judgment in an unrelated case and imposed a twelve-year prison sentence to run concurrently with the sentence in this case.

## II.    Self-Defense Jury Instruction

¶ 7       The district court instructed the jury on Hernandez's right to use deadly physical force in self-defense.  The instruction — tendered by the prosecution — tracked the Colorado model jury instructions on deadly physical force self-defense and incorporated the provocation and initial aggressor exceptions to self-defense.

---

[1] The prosecution also charged Hernandez with two counts of possession of a weapon by a previous offender.  It later dismissed these counts.

¶ 8     Hernandez did not object to the self-defense instruction or tender an alternative instruction.

¶ 9     Hernandez now contends that the district court plainly erred by (1) failing to instruct the jury on nondeadly physical force self-defense; (2) instructing the jury on the initial aggressor exception; and (3) instructing the jury on provocation.

### A.     Standard of Review

¶ 10    A district court must correctly instruct the jury on all applicable matters of law. *Pearson v. People*, 2022 CO 4, ¶ 15. We review jury instructions de novo to determine whether the instructions accurately informed the jury of the governing law. *Id.*

¶ 11    Because Hernandez didn't object to the self-defense instruction, we may reverse only for plain error. *People v. Perez*, 2024 COA 94, ¶ 26. Plain error is obvious and substantial error that "so undermines the fundamental fairness of the trial itself as to cast serious doubt on the reliability of the judgment of conviction." *Id.* (citation omitted).

### B.     Nondeadly Physical Force Self-Defense

¶ 12    Hernandez contends that the district court plainly erred by not instructing the jury on nondeadly physical force self-defense.

3

¶ 13    A person is justified in using nondeadly physical force against another person to defend himself from what he reasonably believes to be the use or imminent use of unlawful physical force by the other person, and he can use a degree of force that he reasonably believes is necessary for that purpose. § 18-1-704(1), C.R.S. 2024. But a person may use deadly physical force in self-defense only when (1) he has reasonable grounds to believe, and does believe, that he is in imminent danger of being killed or of receiving great bodily injury; and (2) he reasonably believes that a lesser degree of force is inadequate. § 18-1-704(2).

¶ 14    "Deadly physical force" means "force, the intended, natural, and probable consequence of which is to produce death, and which does, in fact, produce death." § 18-1-901(3)(d), C.R.S. 2024. Whether physical force is considered "deadly" turns not on the subjective intent of the person using the force but rather on the objective nature of the force used. *People v. Opana*, 2017 CO 56, ¶¶ 14-16. More specifically, the question is whether the force used "would normally be expected to, and in fact did, produce death." *Id.* at ¶ 16.

¶ 15    *Opana* is instructive.  There, a jury convicted the defendant of second degree murder after he shot his housemate in the chest at close range, killing him.  *Id.* at ¶¶ 3-4.  The district court instructed the jury only on deadly physical force self-defense.  *Id.* at ¶ 6.  On appeal, the defendant argued that the district court should have also instructed the jury on nondeadly physical force self-defense.  *Id.* at ¶ 7.  The supreme court rejected this argument, holding that the defendant "was clearly not entitled to" a nondeadly physical force self-defense instruction because the "physical force *actually* inflicted by the defendant upon the victim could not reasonably be characterized as anything other than force, the intended, natural, and probable consequence of which was to produce death."  *Id.* at ¶ 17 (emphasis added).

¶ 16    Despite Hernandez's insistence that "there was certainly some evidence" that he used nondeadly force to defend himself, there wasn't.  Instead, as in *Opana*, there was no evidence from which the jury could've found that the nature and degree of physical force Hernandez used against the victim was anything other than deadly physical force.  During his police interview, Hernandez admitted that he shot the victim in the stomach because he thought the

victim was reaching for a gun. Then, as the victim was running away, the magazine fell out of Herandez's gun. So Hernandez picked it up, reloaded the gun, and fired two more shots at the victim, one of which struck the victim's head and killed him. No evidence or testimony at trial told a different story. And shooting at the victim multiple times — the force that Hernandez used — "would normally be expected to, and in fact did, produce death." *Id.* at ¶ 16.

¶ 17    Thus, Hernandez was not entitled to a nondeadly physical force self-defense instruction.[2]

### C.    The Initial Aggressor Exception

¶ 18    Hernandez next argues that there was insufficient evidence to support instructing the jury on the initial aggressor exception to self-defense.

¶ 19    When a district court instructs the jury on self-defense, it should also instruct on the initial aggressor exception to self-defense if there's "some evidence" to support the exception. *Galvan*

---

[2] Having so concluded, we needn't address the People's argument that nondeadly physical force self-defense can never be asserted as an affirmative defense to second degree murder.

*v. People*, 2020 CO 82, ¶ 25. "[S]ome evidence" means evidence sufficient to support a reasonable inference that the defendant was the initial aggressor; that is, the person who "initiated the physical conflict by using or threatening imminent use of unlawful physical force." *People v. Roberts-Bicking*, 2021 COA 12, ¶¶ 31, 33.

¶ 20    We review de novo whether sufficient evidence exists to support an initial aggressor instruction. *Id.* at ¶ 32. In doing so, we view the evidence in the light most favorable to giving the instruction. *Galvan*, ¶ 33.

¶ 21    We disagree with Hernandez that "there was no evidence" that he was the initial aggressor. Strand testified that as he and Amack were fighting, and before anyone had displayed a gun, a car "pull[ed] up" and "some guys got out with masks" and "pull[ed] out guns." While another witness claimed the victim lifted his shirt and flashed a gun, Strand testified that he didn't see the victim "pull," "show," or "point a gun at anybody." Thus, conflicting evidence was presented as to whether Hernandez — who was with the masked group arriving in the car — initiated the physical conflict by brandishing his gun *before* the victim allegedly threatened the use of unlawful physical force. *Cf. Roberts-Bicking*, ¶¶ 33-36 (noting

7

that the defendant was the initial aggressor when, after being confronted by the victims, he "brandished a pistol" and cursed because "merely *producing* the pistol during an argument was sufficient to warrant instructing the jury on initial aggressor principles").

¶ 22 Because the accounts were conflicting as to whether the victim or Hernandez was the initial aggressor, some evidence supported the initial aggressor exception.

### D. The Provocation Exception

¶ 23 Hernandez similarly contends that the district court plainly erred by instructing the jury on provocation because no evidence supported it.

¶ 24 A person may not use physical force in self-defense if, "[w]ith intent to cause bodily injury or death to another person, he provokes the use of unlawful physical force by that other person." § 18-1-704(3)(a). This exception applies when (1) the other person uses unlawful physical force against the defendant; (2) the defendant provoked the use of such force; and (3) the defendant intended the provocation to goad the other person into attacking him to provide a pretext to injure or kill that person. *Galvan*, ¶ 19.

¶ 25    As before, the district court should instruct the jury on the provocation exception if there's "some evidence" to support it, *id.* at ¶ 25, and we view the evidence in the light most favorable to giving the instruction, *id.* at ¶ 33.

¶ 26    Viewing the evidence in that light, while perhaps a closer call, we conclude that some evidence supported the provocation instruction.  The evidence showed that Hernandez went to the fight armed and ready to act as backup for Amack.  Though conflicting, evidence was presented that the victim didn't step in and reach for the gun in his waistband until after members of Hernandez's group encroached on the fight.  A video taken of the fight similarly shows one of the men in Hernandez's group yelling at and walking toward the men on the ground.  After the encroachment, the victim reportedly reached for the gun in his waistband, prompting Hernandez to shoot the victim in the stomach.

¶ 27    From this evidence, a jury could reasonably infer that Hernandez and his group came armed to the fight and either inserted themselves into or feigned involvement in the fight to goad the victim to intervene as a pretext to shoot him.  *See Perez*, ¶ 31 (concluding that a provocation instruction was warranted because,

although "the provocation evidence was weak," the "some evidence" standard includes "any credible, even if improbable" evidence).

¶ 28 At the very least, given the conflicting accounts presented, the provocation exception was not so clearly inapplicable that the district court should've struck the exception from the self-defense instruction without the benefit of an objection. *See id.* at ¶ 26. And because the provocation exception was neither argued nor mentioned during the trial, it hardly impacted the reliability of the conviction or the fairness of the trial. *See id.* at ¶¶ 26, 32.

¶ 29 We therefore conclude that the district court didn't plainly err by instructing the jury on the provocation exception to self-defense.

### III. Consecutive Sentences

¶ 30 Hernandez says that his convictions for second degree murder and engaging in a riot were based on identical evidence and, therefore, the district court erred by imposing consecutive sentences.

¶ 31 We review the district court's decision to impose consecutive sentences for an abuse of discretion. *Chirinos-Raudales v. People*, 2023 CO 33, ¶ 23.

¶ 32    Though a district court ordinarily retains discretion to impose either concurrent or consecutive sentences when a defendant is convicted of multiple counts, section 18-1-408(3), C.R.S. 2024, requires concurrent sentences when two or more convictions are based on identical evidence and involve a single victim. *Juhl v. People*, 172 P.3d 896, 899 (Colo. 2007).

¶ 33    But the statute requires a district court to impose concurrent sentences only when the evidence supports "no other reasonable inference than that the convictions were based on identical evidence." *Id.* at 900. And convictions are not based on identical evidence when the charges result "from two or more acts fairly considered to be separate acts." *Id.* at 902.

¶ 34    Here, the second degree murder count required the prosecution to prove that Hernandez knowingly caused the death of the victim. § 18-3-103(1)(a), C.R.S. 2024. By contrast, the engaging in a riot count had no specific victim and required the prosecution to prove, in relevant part, that Hernandez engaged in "a public disturbance involving an assemblage of three or more persons which by tumultuous and violent conduct create[d] grave

danger of damage or injury to property or persons."[3]  §§ 18-9-101(2), 18-9-104(1), C.R.S. 2024.

¶ 35    The evidence supporting each conviction is not identical and was based on different acts.  To illustrate, the evidence that Hernandez shot the victim and did not act in self-defense supported the second degree murder charge.  Separate from that, the evidence that Hernandez arrived armed at a fight where several people were assembled, and that he drew his gun and fired multiple shots — independent of the shot that killed the victim — supported the conviction for engaging in a riot.  *See Juhl*, 172 P.3d at 902; *see also Chirinos-Raudales*, ¶ 25.

¶ 36    Because Hernandez's convictions were not based on identical evidence or the same acts, the district court retained discretion to impose consecutive sentences.

## IV.   Mittimus Correction

¶ 37    At the sentencing hearing, the district court imposed a twelve-year prison sentence in an unrelated case to run concurrently with

---

[3] Engaging in a riot is a class 4 felony "if in the course of rioting the actor employs a deadly weapon."  § 18-9-104(1), C.R.S. 2024.  But Hernandez doesn't draw a distinction between the crime itself and the sentence enhancer.  Accordingly, neither do we.

Hernandez's sentence in this case. The mittimus, however, states that the twelve-year sentence runs consecutively.

¶ 38    The parties agree — as do we — that when "the language of the mittimus is inconsistent with the sentencing court's oral ruling, it is proper to remand the case to correct the mittimus to reflect the court's ruling." *People v. Mendenhall*, 2015 COA 107M, ¶ 84. We therefore remand with directions to correct the mittimus to show that Hernandez's twelve-year sentence in the unrelated case runs concurrently with the sentence in this case. *See* Crim. P. 36.

## V.    Disposition

¶ 39    We affirm the judgment and remand with directions to correct the mittimus.

JUDGE BROWN and JUDGE SCHOCK concur.